## CUMBERLAND & ALLEGANY GAS COMPANY ET AL. *v.* ALBERT F. CALER.

[No. 49, April Term, 1929.]

*Decided June 25th, 1929.*

The cause was argued before URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*F. Brooke Whiting,* with whom was *Notley A. Goudy* on the brief, for the appellants.

*Howard Galbreth* and *J. Philip Roman,* for the appellee.

ADKINS, J., delivered the opinion of the Court.

This is a claim for compensation by appellee against appellants, the employer and insurer, for injury to his right eye from acid splashed in it while repairing gas meters on October 8th, 1927. The claim was disallowed by the Industrial Accident Commission, and an appeal taken to the Circuit Court for Allegany County. The issues submitted to the jury were:

1. Is the present disability of the claimant, Albert F. Caler, the result of an accidental injury arising out of and in the course of his employment by the Cumberland and Allegany Gas Company on or about the 8th day of October 1927?

2. Did the claimant, Albert F. Caler, sustain a total disability as the result of an accidental injury while in the employ of the Cumberland and Allegany Gas Company?

To each of these issues the jury answered "Yes"; and on that verdict judgment was entered reversing the order of the commission. This appeal is from that judgment.

The most important exception is to the refusal of defendants' demurrer prayer. It is earnestly contended that there was no evidence legally sufficient to support appellee's claim that the injury of which he complained was the result of the splashing of acid in his eye; that the expert testimony offered

by claimant at most proved only that the injury could have resulted from that cause; while defendants proved by two medical experts that it did not result from that cause; that in view of the adverse finding of the commission, claimant failed to meet the burden imposed upon him by the statute. As to the last, that concerns the weight of the testimony, with which this court has nothing to do in considering demurrer prayers. And as to the medical testimony offered by claimant, it may be conceded that standing alone it would not have been sufficient to take the case to the jury. But it does not follow that claimant's case must fail for that reason. In our opinion there was testimony from which a reasonable mind could infer, not only that the injury could have resulted, but that it did result, from the cause assigned. Claimant testified he had had myopia, or near sightedness, for a number of years and had lost the sight of his left eye, seven years before the injury complained of, from being struck in that eye by a boxing glove, but that up to the time of the injury from the acid the sight of his right eye was good; that he was examined for life and accident insurance by the Equitable Life Insurance Company and passed in 1917; that he was examined in 1920 and 1922 by two industrial companies with whom he sought employment and was passed; that since 1918 he had been using the same glasses and had no difficulty in reading newspapers or examining meters or doing other work which required good eyesight; that after the acid got into his eye his vision was clouded and confused; that he could not read, and everything seemed to be in a shadow; that he returned to work on Monday after the accident, which occurred on Saturday, and told the inspector at the shop that he would have to quit, that he could hardly get along at all, but the inspector told him to "hang on"; that he was taken to two doctors, who prescribed for him, but neither did him any good; that if he tried to read and looked at a word two or three letters would be missing, he seemed to be looking through a glass bead in the centre of his eye; that he was thinking of his eye and testing his vision constantly and became alarmed about it; that about a week after the accident

witness was working in a cellar and owing to defective vision bumped his head into a pipe, which "made my eye look like there was a million little lights or little stars all fluttering at the same time," and gave him an intense headache; that his sight got worse and worse from day to day; that on February 3rd, while he was taking a census of the different kinds of appliances used by the consumers, he walked into the cellar of a house and bumped his head against the support that held up the joists, and in an hour after that he couldn't tell the numbers on the houses; that he wasn't able to work after that; that he went to the Wilmer Institute, Johns Hopkins Hospital, and remained there from February 7th to March 1st, but got worse instead of better. At the time of the trial he testified he could tell the difference between light and darkness, but that was about all; that he could not see any one sitting in front of him, could not see to do any work.

Claimant was corroborated by his wife as to his impaired vision immediately after the accident of October 8th. Dr. Louis A. Witzeman, an eye specialist of Akron, Ohio, examined claimant on September 6th, 1928, and on November 30th, 1928; his diagnoses were: "detached retina, right; secondary cataract, left; vitreous opacities." Testifying further, he included inflammation of the uvual tract among the common causes of detachment of the retina. He said: "The fact that no scar or other evidence of injury can be seen on the surface of the right eye does not in any sense indicate that the acid or other foreign substance that entered that eye at the time of the original accident was not sufficiently strong or irritative to result in an inflamation of the interior coats of the eye that would produce a detachment."

We agree with the learned trial judge that if it be true, as testified by claimant, that the sight in his right eye was perfectly good, except for near-sightedness, up to the time of the accident of October 8th, and it declined from that time on, it would be a strange coincidence that it began at that particular time if there were no connection between the two occurrences. It is just that coincidence which takes this case out.

of the class, of which some of those cited by appellants are illustrative, where verdicts were properly directed in favor of defendants because there was no evidence tending to show that the respective injuries complained of were attributable to causes by reason of which they would have been compensable, rather than to causes which were not within the purview of the respective acts.

In our opinion, on the facts of this case, it was a question for the jury, and the demurrer prayers were properly overruled. *Standard Gas Equipment Corporation v. Baldwin,* 152 Md. 321; *Neeld Construction Co. v. Mason,* 157 Md. 571.

There were twelve exceptions to rulings on evidence. The first three were to permitting claimant to testify to accidents occurring after that of October 8th, which was the only injury for which a claim was filed with the commission, although the other occurrences were during the same employment. This testimony was admitted only to show the extent to which claimant's eyesight had been affected by the injury complained of, and that was fully explained both at the time of admitting the testimony and in the prayers. For this purpose the testimony was admissible.

The error, if any, in permitting claimant to testify that the specialists whom he had consulted had given him no hope, which was the subject of the fourth exception, was not prejudicial, inasmuch as it was admitted that claimant was blind.

We find no error in the ruling embraced in the fifth and sixth exceptions. The wife's testimony as to the extent of claimant's blindness was evidently intended as the result of her observation, and was not hearsay.

The question asked claimant's expert, which was the subject of the seventh exception, sought an explanation of a previous answer of the witness. It was proper to permit him to explain. The eighth, ninth, and tenth exceptions may be considered together. The deposition of claimant's expert was taken under a commission. At the trial the court excluded so much of the deposition on direct examination as contained a history of the case, but admitted certain other

parts of the direct testimony. Defendants declined to offer the testimony of the witness on cross-examination. Whereupon claimant was permitted, over defendants' objection, to offer it, and also his testimony on re-direct examination. The testimony objected to appears to have been proper cross-examination on the direct testimony admitted, and proper re-direct testimony. The record does not disclose that it depended at all upon the part of the direct examination which was excluded. It does not, therefore, come within the ruling in *Balto. & O. R. Co. v. Dever,* 112 Md. 311, cited by appellants, where it was held erroneous to admit cross-examination on the subject of direct interrogatories which were excluded. We find no error in any of the rulings embraced in these exceptions. *Little v. Edwards,* 69 Md. 506. Nor are the questions and answers objected to in the tenth and eleventh exceptions objectionable on the other grounds urged by appellants. It was proper to give the witness an opportunity to explain his previous testimony, and it does not appear that in doing so any irrelevant testimony was introduced. The twelfth exception was to a question asked one of defendants' witnesses by the court while the witness was under cross-examination. The question would have been entirely proper if it had been asked by claimant's attorney, and no reason occurs to us why it was improper when asked by the court.

*Judgment affirmed, with costs to appellee, and case remanded.*