CELANESE CORPORATION OF AMERICA ET AL. *v.* DORA ELIZABETH LEASE, ADMINISTRATRIX.

[No. 44, April Term, 1932.]

*Decided May 20th, 1932.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*F. Brooke Whiting* and *G. Randolph Aiken,* for the appellants.

*Estel C. Kelley,* with whom was *William A. Huster* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

This is an appeal from a judgment of the Circuit Court for Allegany County, reversing a decision of the State Industrial Accident Commission, under and by which the commission disallowed a claim filed by Theodore (also known as Dora) W. Lease for an accidental injury arising out of and in the course of his employment by the Celanese Corporation of America.

It submits two questions: (1) Whether there was in the case competent evidence legally sufficient to show that the injury to Lease arose out of and in the course of his employment by the Celanese Corporation of America, hereinafter referred to as the Celanese Corporation; and (2) whether at the trial in the Circuit Court for Allegany County it was competent for the parties to supplement the record of the proceedings before the State Industrial Accident Commission, hereinafter called the commission, where an issue of fact was submitted to a jury, by additional evidence. A third question was determined by the trial court, to wit, whether the notice and claim were filed in time. The rulings of that court were adverse to the appellants on issues involving that question, but appellants' objection to these rulings was not pressed in this court, and they will not therefore be considered or discussed further than to say that, if there was a delay, it was excused by the commission, and there is nothing in the record to indicate that in so acting it abused the discretion reposed in it by the statute. Code, art. 101, secs. 38, 39; *Victory Sparkler & Specialty Co. v. Francks,* 147 Md. 383, 128 A. 635.

In connection with the first question, evidence offered before the commission tended to establish the following state of fact: Theodore W. Lease, who also appeared to have been known as Dora W. Lease, was employed by the Celanese Corporation as a truck driver. In the course of that employment, at about 5.30 P. M. on August 28th, 1930, he was engaged in loading boxes weighing from 500 to 600 pounds from a little truck into a freight car. He was standing on the ground, and had up-ended one of the boxes to tilt it towards the opening in the car, and had lifted it nearly all the way, when he slipped, and the box came back. It did not strike him, but he had to "strain" to keep it from falling. It slipped two and a half or three feet, and, to quote from his deposition, "he hurt himself on the right side, above the hip, in front." He reported to "his boss Mr. Squires, that he had hurt himself, and got a slip to go to the first aid department." He told Squires and the nurse in the first aid

department that he had "strained" himself, and he also told the nurse that he thought he had ruptured himself. He went to the first aid station on the second day after he was hurt, saw Dr. Walker, the "plant physician," three times, and returned to work in about two weeks. He had no bruises, but did have abdominal pains, "a sudden strain did the whole business." He later quit work, consulted Dr. F. A. G. Murray, and, on his advice, went to the Allegany hospital, where he submitted to an operation for a perinephritic abscess, returned to his home on December 24th, 1930, reentered the hospital in the following July, and on December 25th, 1931, died. He was again operated on in August, 1931, and Dr. R. C. Bowen testified that at that time there were "numerous sinuses extending from the kidney region into the groin and around the hip, and at that time there was a large abscess extending practically up the back unto the scapula and shoulder blade." The same witness further said he was unable to say that a perinephritic abscess was always the result of a direct blow; that he had never heard of a case in which such an abscess had developed from a strain, but that a strain is usually associated with a rupture of "fibre muscle"; that perinephritic abscesses develop without strain at all; that he had not had many cases of such abscesses following accidents, but had had quite a few following systematic infection; that "one cannot always find when systematic infection originated in the body, that this was a case in which a doctor would have to speculate under the circumstances; that if he had some rupture in the soft tissues surrounding the kidney, would expect pain in front of abdomen down to ureter."

For the employer and insurer, Dr. William A. Gracie testified that he had examined the patient and the hospital record in the case, and that upon that examination he did not see how a man can develop a perinephritic abscess from such an alleged accident. On cross-examination he was asked if it were not true that in all severe strains muscles are torn and will show bruised and bloody places, and he answered that that was possible, but that "you have a discoloration on the

outside." When asked if it were not possible that a severe strain, such as had been described by Lease, would result in torn muscles which might become infected from some infection in the blood stream from teeth or tonsils, he said: "Now a man holding something could tear the muscles of his back; a severe strain—a man could be under such pressure that something would give, but if it were that severe I certainly would think beyond the shadow of a doubt that the following day, or immediately after that time, the man would be severely shocked and the physician would see marked evidences of these torn muscles, if it was that severe. If that severe, could create a hemorrhage and evidences of that severe injury would be showing to the extent that the patient would be, in my judgment, practically confined to bed and very ill indeed." When asked by Commissioner Crothers what effect such an injury would have in localizing such an infection, he said: "Well, there is a possibility perhaps. There are a great many different views on those subjects, and my own view, I am sure, is not in accord with a great many. I personally feel that the majority of these things are coincidences. I am just giving my own opinion. There are a great many views, but from authority and reading you soon would fall in accord with certain views, and I think the majority of these things are more frequently coincidences, and not actually what I know."

Dr. H. B. Walker first saw Lease on August 30th, 1930, and at that time he complained of pain and strain of the abdominal muscles where the "pubic bone" is located, but did not complain of any pain in his back, and there was no discoloration or bruises and no evidence of injury on his body. He also testified that "to develop a perinephritic abscess one must have a direct blow over the kidney, and I cannot conceive the idea and find any connection between the abdominal muscles and the suppurated perinephritic abscess."

Dr. Frank M. Wilson examined Lease and the hospital records, and heard the testimony, and from those sources of information formed the opinion that there was no connection

between the alleged accident on August 30th, 1930, and the "abscess which Lease had." He further testified that a strain would not cause such an abscess.

Bessie L. Phillips, a nurse at the factory of the Celanese Corporation, said that when Lease "came in" he said that he was "loading boxes on a truck and hurt himself," and complained of pain in the lower part of his abdomen.

F. A. Squires, superintendent of labor and traffic for the same company, said that Lease did not speak to him of the accident until the following day, and he then gave him a pass to the first aid department, and that a few days later he told witness that he had hurt himself loading boxes on a truck. He further said that from September 18th to November 1st Lease made no complaint, and performed his work all right, although witness did not think he was engaged in loading any express cars after he returned to work, as "things were made as light as possible for him when he returned."

Upon that testimony the commission found that the claimant's injury did not arise out of and in the course of his employment, and on October 23rd, 1931, disallowed the claim. From that decision the claimant prayed an appeal to the Circuit Court for Allegany County, and upon the suggestion of his death on February 3rd, 1932, his administratrix, Dora E. Lease, was made party claimant.

At the trial of the case in that court, in addition to the evidence taken in behalf of the deceased claimant, the appellee offered the testimony of five witnesses which over objection was admitted. Thornton W. Lease, a brother, said that shortly after Dora W. Lease was hurt he saw "a big red welt" on his right side. Mrs. Virginia Koelker, a sister, said that about August 29th, 1930, she saw her brother come "down through the field," the way he always went to work, and he told her he "got hurt down at the mill" and showed a lump, scarlet and blue, on his side; that he was limping and complained of pain in his back and side. Dr. William L. Burns, who testified that the perinephritic abscess could have been caused by a strain such as that to which Lease was subjected, said that all the authorities in the medical pro-

fession recognized that fact. Dr. F. A. G. Murray, who attended Lease, testified that a strain such as Lease had received could have caused a perinephritic abscess, and Dr. A. Leo Franklin testified to the same effect.

At the close of the case, the claimant offered five prayers, and the employer and the insurer ten, and they also filed special exceptions to the claimant's second prayer. The court granted the claimant's first, second, and fifth prayers, overruled the appellant's special exceptions to the claimant's second prayer, and granted appellant's fifth, sixth, seventh, ninth, and tenth prayers, and refused the others.

The rulings of the court in allowing the five witnesses last referred to to testify at the trial in the circuit court are the subject of the first fourteen exceptions; its rulings in reference to the claimant's prayers are the subject of the fifteenth exception; its ruling in overruling appellant's special exception the subject of the sixteenth exception; and its rulings upon the appellant's prayers the subject of the seventeenth exception.

The claimant's fifth prayer and appellant's third, fourth, and eighth prayers related to a supposed delay on the part of the claimant in reporting his claim, and for reasons stated above need not be further considered. The claimant's first and second prayers, if the evidence properly in the case was legally sufficient to permit the jury to find in his favor, were unobjectionable. So that the only questions in the case in this court are those which have been stated, and these will be considered in their order.

The first question will be considered (a) in connection with the evidence taken before the commission and read to the jury in the circuit court, and (b) in connection with that evidence and the evidence offered for the first time in the circuit court, which is the subject of the first fourteen exceptions.

(a) Assuming the truth of all evidence tending to support the appellee's claim and such inferences as may naturally and legitimately be deduced therefrom, as we are required to do by the form in which the question is presented, there

can be no reasonable doubt that Lease on August 28th, 1930, did in the course of his employment by the Celanese Corporation suffer a severe strain, so that the real issue is whether that strain was the cause of the nephritic abscess which later disabled him and eventually resulted in complications which caused his death.

The evidence taken before the commission tended to show these facts: On that day Lease was engaged in loading, without assistance, from a small truck into a freight car, boxes weighing from 500 to 600 pounds. In that operation he would up-end a box, tilt it towards the opening in the freight car, and then shove it into the car. He had gotten a box clear of the little truck, and had lifted one end to shove the box forward, and when it was "nearly all the way up," his foot slipped on some gravel, and the box "came back" slipping back a distance of two and a half or three feet, and, in his effort to hold it and "keep it from breaking open," he strained himself. He did not feel the injury so much at the time, but when he got on the bus going home he felt the effects of it, it hurt then, and when he got home and sat down he could hardly get up, and he had a "big welt just like your fist." He was treated for his injury and returned to work on September 18th, following, and remained at work until November 1st. On November 21st he went to a hospital, where it was found that he was suffering from a perinephritic abscess. An operation appears to have afforded temporary relief, but subsequently other abscesses or sinuses developed, which required his return to the hospital, and later he died of septicaemia. When he was first injured, he complained of abdominal pains, but in November, 1930, when he went to the hospital, he complained of pain in his back.

The only medical evidence for the claimant at the hearing before the commission was that of Dr. R. C. Bowen, which was wholly negative, inconclusive, and without probative force of any kind. He expressed no opinion as to any causal connection between the strain and the claimant's disability, nor was he asked to express one. For the employer and the

insurer, Dr. Gracie testified that he could not see how a man could develop a perinephritic abscess from such an accident, although it was possible that such an abscess might result from a severe strain, and Drs. H. B. Walker and Frank M. Wilson denied positively that the abscess resulted from the strain. All the evidence indicated that neither ruptured blood vessels nor torn muscles would in themselves cause such an abscess, but that they could afford an efficient medium for the development of infection already present in the blood stream.

These facts, apart from the medical testimony, afforded evidence at least legally sufficient to show a causal connection between the accident and the disability. It is true that the abscess was a secondary and not a primary result of the accident, and that the disability would not have ensued had not the claimant had in his system at the time the seeds of infection. But, if the result of the accident was to put those hitherto latent sources of danger in motion so as to cause disability, such disability was compensable under the act. *Neeld Construct. Co. v. Mason,* 157 Md. 575, 146 A. 748; *Abend v. Sieber,* 161 Md. 645, 158 A. 63, 64; *Kauffman Construct. Co. v. Griffith,* 154 Md. 60, 139 A. 548; *Dickson Construct. & Repair Co. v. Beasley,* 146 Md. 575, 126 A. 907. And while, as stated by Judge Sloan for this court in *Abend v. Sieber, supra,* where the disability results from a secondary cause, "proof of such facts is required and nothing assumed," yet where it may be fairly deduced from established facts, the inference may properly be drawn. *Neeld Construct. Co. v. Mason, supra.* There is in this case no direct evidence of the claimant's physical condition before the accident, but, from the nature of the work in which he was engaged, and the manner in which he performed it, it may be reasonably inferred that he was a strong robust man. He was subjected to sudden heavy strain, and, while the box did not strike him, he began to suffer pain, a "big welt" appeared which would indicate ruptured or torn muscles, he did not work for two weeks, and when he returned "things were made as light as possible for him" because he had been hurt, and from

the time of the accident until his death his physical deterioration was unbroken. These facts permit the inference that, as a result of the strain, he ruptured some of the deeper muscular tissue, and created the condition which the medical testimony indicated was suitable for the development of the infection which eventually caused his death. There was medical testimony that such a strain would not have that effect, but Dr. Gracie frankly admitted such a possibility, and that conflict was for the jury, who were as competent to pass upon that fact as the physicians, for common sense and common experience tell even the layman that a strain may be heavy enough to even tear muscles apart.

(b) If the evidence given in the circuit court were considered, the question would be freed from possible doubt. But without considering that evidence, for reasons already assigned, the evidence taken before the commission was legally sufficient to take the case to the jury on the causal connection between the accident and disability, and we find no error in the rulings of the trial court on the prayers and special exception.

The second question involves the validity and meaning of chapter 406 of the acts of 1931, Code, art. 101, sec. 56, relating to appeals from the commission. For reasons which need not be repeated here, it was held in *Thomas v. Pennsylvania R. Co.*, 162 Md. 509, 160 A. 793, that the effect of that statute is to limit the courts and also the jury in every case in which an appeal from a decision of the commission is taken to a consideration of the evidence, and only the evidence, taken before it. The evidence given by the witnesses in this case, whose testimony is the subject of the first fourteen exceptions, should not therefore have been admitted. And since, from the nature of that testimony, its admission may well have affected the jury in their consideration of the first issue submitted to them, it follows that the judgment from which this appeal was taken must be reversed.

> *Judgment reversed, and case remanded for a new trial, with costs to the appellants.*