THOMAS R. SYMINGTON *v.* CORAL F. GRAHAM.
[No. 38, October Term, 1933.]

442

*Decided December 7th, 1933.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, DIGGES, PARKE, and SLOAN, JJ.

*Walter L. Clark,* for the appellant.

*Walter C. Mylander* and *Nathan Patz,* for the appellee.

Parke, J., delivered the opinion of the Court.

The plaintiff, Coral F. Graham, wife of Carroll Graham, was injured on February 12th, 1932, in a collision between an automobile driven by her husband and one driven by Thomas R. Symington, the defendant. The plaintiff recovered a judgment against the defendant for the injury which she sustained, and the defendant has brought this appeal to have reviewed those of the court's rulings that first admitted, and later refused, prayers instructing the jury to ignore the plaintiff's testimony which purported to show that the accident was, almost five months afterwards, the cause of the rupture of the plaintiff's placenta.

The impact of the collision threw the plaintiff from the front seat so that her face struck the windshield, and she was thrust forward with her knees jammed fast underneath the cowl board of the automobile. She was momentarily stunned, and her nose bled freely from the force of the blow of the windshield, but she got out of the automobile, and assisted her husband with the defendant, who was unconscious and badly injured. After the defendant had been carried away to a nearby store, the plaintiff felt nauseated and sick and walked to a neighboring farm house, where she stayed until the defendant was removed in an ambulance, when the plaintiff went to the store, where the doctor examined her to see if there were any bones broken in her nose. After this examination, the plaintiff was put in an automobile and sent home in a nervous condition. Her nose became very much swollen and black to the eyes, and she became sore, stiff, and bruised, but had no pain until the evening of the day following the casualty, when pain, which was more pronounced on the right side of the abdomen, began. She stated that the manner in which her knees had struck the automobile had caused the "jar and the pain through my (her) stomach." She had bruises on both legs, which were sore, and they remained for four weeks before they were entirely gone. The plaintiff described these abdominal pains as "intense stomach pains," which continued for a period of three

or four weeks. She was then able to proceed with her household duties.

While the severe stomach pains ceased at the end of three or four weeks after the injury, she experienced slight similar pains until the end of two months after the accident. After this period, the pains were succeeded by an unusual soreness and drawing sensation in the left side, which continued until the day she went to the hospital on July 3rd. The plaintiff thus described the discomfort: "The burden seemed too low, and just uncomfortable; just a pulling and drawing sensation day and night."

It was at this stage of the evidence that the plaintiff was asked to describe her sensation during the period that elapsed between the accident and the operation, and the court permitted the question to be asked, and refused to strike out the answer on the ground assigned by the defendant, that the answer was not responsive. These rulings constitute the first two exceptions.

The choice of the word "sensation," which comprehends both physical feeling and mental condition, apprehension, or realization, afforded the witness so wide a range that it would be difficult to give an answer which was not responsive, if it related to any proximate consequence of the tort within the defined period. The reply of the plaintiff was confined to the effect of the physical injury upon her nervous system, as indicated by symptoms of a resultant mental state; and was an element in the damages sustained. *Gordon v. Opalecky,* 152 Md. 536, 550, 137 A. 299; *Green v. Shoemaker & Co.,* 111 Md. 69, 80, 81, 73 A. 688; *Agricultural & Mech. Assn. v. Gray,* 118 Md. 600, 604, 85 A. 291.

Since the next exception arose on an objection to the inquiry if the plaintiff had, within the same period, experienced any other sensations than those narrated, it has been disposed of by what has just been said, but the fourth exception is to the refusal of the court to strike out the italicized words in the plaintiff's answer stating that her other sensations were: "Just those occasional pains, of course, and this knowledge

within myself that I had not been right since that jar through the stomach and abdomen."

The pains and their location in the body and other symptoms, which the witness had described, were in evidence, and to these pains and symptoms the answer referred, and the addition of the witness was no more than an awkward repetition in another form of her previous testimony. The expression, "Knowledge within myself that I had not been right through the stomach and abdomen," was simply a statement that the pains and discomforts which the plaintiff had experienced were the interior personal manifestations which informed the plaintiff of the apparent location of her ailment.

The designation of the parts of the body where pain was felt and the time when it began, its nature, and how long it was endured by its subject, are a narration of fact and not an opinion of its cause, so here the testimony given was the plaintiff's knowledge of conditions which had existed from the evening of the day after the accident until the day of the operation.

The conditions which the plaintiff described in the testimony set forth in the first four bills of exceptions were not relevant nor material unless they were the direct and proximate result of the injury inflicted by the defendant. The burden was upon the plaintiff to establish this causal connection. She had been pregnant for about three months when the accident happened, and her physical suffering was concurrent with the period of her pregnancy, which is frequently accompanied by some prenatal pains in the abdominal region, which embraces, not only the stomach, but also the uterus. It was, therefore, incumbent on the plaintiff to establish by competent proof that the pains and discomforts to which she had testified were not those of lengthening pregnancy. The point is made by the defendant in his fifth exception that this testimony was attempted to be supplied by the plaintiff, and that she was incompetent to testify.

The plaintiff was asked to explain the meaning of the words in her preceding answer that she "had not been right

since the jar through the stomach and abdomen." Her reply was that it was not a question of feeling, but of knowledge. She further said: "I am a mother; I have eight children. I know that I was not right and had not been right since I had received that bump. Doctors may say this or may say that; I am a mother. This happened within my own body. No one can tell more about it than a mother." The defendant moved to strike out this answer. The material objection urged is that the plaintiff had expressed an opinion or conclusion which she was incompetent to form. If the most liberal construction be given to this testimony, it can have no greater significance than that the abdominal pains and discomforts undergone after the accident were due to some abnormal circumstances of her pregnancy which did not exist before the happening of the collision. A matron, who had given birth to eight children, is qualified by experience to characterize the pain and discomfort she had undergone during a later pregnancy to be indicative that gestation was not progressing according to its natural course in the usual healthy state, and, so, this was properly offered in evidence, as she had given the data upon which her opinion is founded. *United Rys. & Elec. Co. v. Corbin,* 109 Md. 442, 455, 456, 72 A. 606; *Fletcher v. Dixon,* 113 Md. 101, 107, 77 A. 326; *Balto. etc. Turnpike Co. v. Cassell,* 66 Md. 419, 7 A. 805; *Sellman v. Wheeler,* 95 Md. 751, 753, 754, 54 A. 512.

The plaintiff's testimony, contained in these exceptions, was to the physical consequences which ensued the happening of the accident, and there was no reversible error in the first five exceptions. This admitted testimony was, however, the extent of her competency to testify with reference to any cause of the Cæsarian section being done and its causal connection with the accident.

The plaintiff's lay knowledge was limited by her experience in eight previous periods of normal pregnancies and deliveries, and, so, afforded her no basis to express an opinion either of what malady necessitated the operation or of what was the cause of the disorder with which she suffered.

Although she described her pain and discomfort as abnormal, she did not attempt a diagnosis. Her ailment was not of external appearance nor susceptible of apprehension by any of her senses; and the ascertainment of its cause, therefore, depended upon inferences and interpretations to be drawn and made upon the data observed by a skilled and qualified expert or furnished to him by herself and others. It was peculiarly within the province of medical science to ascertain the cause from which the illness requiring the operation arose, and whether it was produced by violence or disease. It is in respect to the rulings on this phase of the evidence that the most important questions arise. The remaining exceptions are to the refusal of the court to strike out, and to grant prayers instructing the jury to disregard, testimony, which was taken subject to exception, and which portrayed the pain and suffering of the plaintiff in connection with a Cæsarian operation which resulted in the delivery of a dead full term child and the rescue of the mother from death. The position of the defendant was that these matters were not shown to be connected with the wrongful act or fault of the defendant.

The testimony given subject to exception was that, on the long automobile trip on July 3rd from Hampstead to Glen Burnie, the plaintiff complained of feeling sick after she and her husband had driven through Baltimore. She was no better when they reached Glen Burnie, and a doctor was summoned. The plaintiff was then in pain, desperately ill, and bleeding freely. On the coming of the doctor, he examined her, and she was wrapped in a sheet and was carried in a semi-conscious condition to his automobile, and, in that state, removed to the hospital. She was then suffering the severest pains she had ever had on the right side of her body.

The medical testimony is that when the plaintiff entered the hospital she was critically ill. She had lost much blood, which had produced a decided shock, her pulse was weak and rapid and a large quantity of the blood from the hemorrhage had congealed inside of the uterus. The cause of the

profuse hemorrhage was the premature complete separation of the placenta from the lining of the uterus.

From the plaintiff's symptoms it appeared to the doctor in charge that she had an involvement of the kidney known as nephritis, which the medical profession is inclined to believe is the actual reason for the placenta's separation from the lining of the uterus. An immediate operation was imperative, and a Cæsarian section was performed. The full term baby was delivered stillborn, although it had been alive until about two hours before the operation. After a painful convalescence of fifteen days, the mother left the hospital. The surgeon who had performed the operation was called for the plaintiff, and, after stating that the cause of the plaintiff's condition on July 3rd, and of the surgical operation, was the complete separation before birth of the placenta from the lining of the uterus, which was a matter for an expert's opinion, had propounded to him a hypothetical question which embraced a complete statement of the pertinent facts in evidence with reference to the happening of the accident, the nature and extent of the injury inflicted upon the plaintiff, her condition and symptoms at the time, and during the period from the accident until the operation, and her related reactions thereafter. Upon the assumption of the truth of the facts so presented, the surgeon was asked if he would attribute the premature separation of the placenta to the accident of February 12th, and his answer was that he would not. In explanation of his bare negative answer, the doctor stated that, while it was impossible for an expert to tell exactly what might cause a premature separation of the placenta, an associated shock, blow, or trauma is regarded as incidental, and would not cause the premature separation of the placenta, if nephritis were not present. This witness further testified that partial premature separation of the placenta occurred; that it always offered enough evidence to make a diagnosis by an external examination; and that, with very few exceptions, its happening was followed by an early onset of labor. In answer to another hypothetical question, the witness stated that it was not probable that the victim

of a partial separation of the placenta, accompanied by severe, almost constant, pain, but without any external flow of blood, could go along for several months before the ultimate full separation of the placenta. There is no evidence of any bleeding before July 3rd. So, the only evidence of probative force on this record fails to establish a sufficient connection of the accident with the malady of the plaintiff on July 3rd, but tends to establish an opposite conclusion.

In order to prevent imposition it is necessary to keep constantly and firmly in view the elementary rule that before a plaintiff can recover it is necessary for him to show a damage naturally and reasonably arising from the negligent act. The burden is upon the plaintiff to prove that the particular consequence for which a pecuniary finding is sought is the direct result of a wrongful act or omission by the defendant. The plaintiff fails in this burden, although he prove the negligence and the injury, unless he show that the particular injury would in ordinary course flow from the negligence. *Abend v. Sieber,* 161 Md. 649, 158 A. 63; *Benedick v. Potts,* 88 Md. 52, 40 A. 1067; *Beven on Negligence* (4th Ed.), Vol. 1, pp. 67, 85.

The plaintiff has failed in this case to meet this burden of proof. The testimony of the doctor, whom she called, is clearly to the effect that there is no natural and reasonable connection between the accident of February 12th and the plaintiff's illness and operation of July 3rd. Nor is this connection shown by any other testimony on the record. Conjecture, speculation, or mere possibility, must not usurp the place of proof of the essential facts in issue if the trial of facts is to remain a rational and just procedure. For the error in refusing the motion to strike out the testimony with reference to the pain, suffering, and distress of the plaintiff attributable to her illness and its resulting operation, and in declining to grant the defendant's prayers excluding these matters from the consideration of the jury in estimating the amount of damages sustained, the judgment must be reversed.

*Judgment reversed, with costs to the appellant, and case remanded for a new trial.*