## SUPERIOR TRANSFER COMPANY *v.* BERTHA HALSTEAD, ET AL.

[No. 62, October Term, 1947.]

*Decided January 15, 1948.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Foster H. Fanseen* and *Philip S. Ball* for the appellant.

*M. Richard Moss*, with whom was *Willard I. Silverberg* on the brief, for Bertha Halstead, appellee.

*James J. Lindsay*, with whom was *George L. Darley* on the brief, for the Admiral Taxi Service, Inc.

MARBURY, C. J., delivered the opinion of the Court.

This a suit for damages for personal injuries alleged to have been suffered by the appellee, Bertha Halstead, as the result of a collision between a taxicab of the Admiral Taxi Service, Inc., in which she was a passenger, and a tractor-truck owned and operated by the appellant, Superior Transfer Company. It was tried in the Baltimore City Court before Judge Moser, sitting without a jury. He found in favor of the plaintiff against the

appellant, and in favor of the Admiral Taxi Service, Inc., against the plaintiff. From judgments based on these verdicts, the Transfer Company appealed.

The collision occurred about 10:30 a. m., on January 30, 1946, at the corner of Mulberry and Fremont Streets in the City of Baltimore. Both vehicles were traveling east on Mulberry, a one way street. Both were stopped at the corner of Fremont by a red light. The taxi was continuing east on Mulberry. The tractor-truck was intending to make a right-hand turn down Fremont. The tractor-truck was on the right near the curb. The taxi was several feet to the left. The tractor, by reason of the length of the truck or trailer, had to turn slightly to the left, towards the taxi, before making the right-hand turn. Both started when the light changed, and the left front bumper of the tractor scratched the right rear fender of the taxi. The scratch was about six or seven inches long, and was not felt by the plaintiff who was sitting on the rear seat of the taxi. The driver of the taxi, however, stopped when the impact occurred, and the plaintiff says (the driver denies) that the stop was so sudden that she was thrown against the back of the front seat, striking it with her stomach. The plaintiff was pregnant. She told the driver she was not hurt, but says she did feel some cramp-like pains which she attributed to shock. When she reached her destination, the home of a relative, the pain became so bad she had to go to bed. Her husband was called after a couple of hours, took her home in a cab, and a doctor was called later in the night. She stayed in bed three days, then got up, and went back to bed intermittently until February 23d when she was taken to the hospital. During the period from January 30th to February 23d, she testified she had pains and bled, and saw the doctor several times. Her doctor had a stroke, she called another doctor when pains and bleeding got much worse, and the second doctor took her to the hospital where she had a still born child on February 24th. She testified that she was in perfect condition before the accident.

Various questions arising out of rulings on the evidence are raised by the record, and it is contended that the Admiral Taxi Service should not have been exonerated because of the high degree of care required of it towards its passengers. But the most important question is whether there was legally sufficient evidence to connect the accident with the plaintiff's injuries. As the decision of this phase of the case may dispose of the entire litigation, its immediate consideration is imperative.

Under some circumstances, non-medical proof that a disease or an injured condition followed an accident is sufficient to take to the jury the question whether it resulted from that accident. That has been held in a number of cases arising under the Workmen's Compensation law where the evidence rules are somewhat relaxed. *Cumberland etc. Co. v. Caler,* 157 Md. 596, 146 A. 750; *Neeld Const. Co. v. Mason,* 157 Md. 571, 146 A. 748; *Celanese Corp. v. Lease,* 162 Md. 587, 160 A. 801; *Baber v. John C. Knipp & Sons,* 164 Md. 55, 163 A. 862. But in *Bethlehem Steel Co. v. Ziegenfuss,* 187 Md. 283, 49 A. 2d 793, we held that lay evidence that a person did not have hernia before the accident was not sufficient to satisfy the statute which required definite proof of such fact before an award could be made. And in *Baltimore & O. R. Co. v. Brooks,* 158 Md. 149, 148 A. 276, it was held that insanity could not be proved to result from an accident without medical evidence. Statements by an injured person how an accident affected him are admissible as facts and not as opinions. *City Pass. Ry. Co. v. Nugent,* 86 Md. 349,, at page 360, 38 A. 779. But where such statements fail to show a sufficient connection between the accident and the malady (premature separation of the placenta from the uterus, causing the death of an unborn child) this court has held the jury could not conjecture or speculate on the cause. Speaking through Judge Parke, we said "It was peculiarly within the province of medical science to ascertain the cause from which the illness requiring the oper-

ation arose, and whether it was produced by violence or disease". *Symington v. Graham,* 165 Md. 441, at page 447, 169 A. 316, 319. In another case in which there was an injury on September 8th which caused abdominal pain with discharge of blood from the vagina, the attending physician "thought it was a threatened miscarriage". However, on October 17th, the plaintiff was operated on by another doctor who removed the fœtus. The plaintiff had a pregnancy outside of the Fallopian tubes. We held there was no evidence to show that the accident had anything to do with the miscarriage or the abortion. While a reasonable inference might be drawn from the fact that the plaintiff complained of pain from the time of the accident, nevertheless where the subsequent development has usually its peculiar and independent cause, the original accident as the exciting cause of the ultimate effect must be affimatively shown. Since no witness testified that the miscarriage was the effect of which the accident was the cause, the defendant's demurrer prayer should have been granted. *Abend v. Sieber,* 161 Md. 645, 158 A. 63.

It may be presumed that it is a matter of common knowledge, or at least of common belief, that a miscarriage may be caused by a fall or a blow. If the case before us presented only the facts that the plaintiff was thrown against the seat of the cab as a result of the impact with the tractor-truck, that she then started to suffer pain and to bleed and that this continued until she had a miscarriage, her evidence to that effect might be sufficient to submit the case to the court, sitting without a jury. But we have more than this, and the additional evidence puts a different aspect on the connection between the accident and the miscarriage. The medical testimony is that the plaintiff spontaneously delivered a dead abnormal six months female baby. The abnormality was that the brain tissues were not all there. When the doctor was asked what was the cause of the baby's death he said there was "some process by means of which" it had been injured "so much that the body

was macerated and the brain tissue absent". The witness was allowed to give the history told him by the plaintiff that she had an automobile accident three weeks before, and had been bleeding since. This was later stricken out, but, even with it in, the plaintiff's case would not have been greatly helped. There was not a shred of testimony that such an accident as the plaintiff said she had could have macerated or softened the body of the baby and could have destroyed the tissue of its brain, so that it died, and caused the miscarriage. This is something certainly not within the knowledge of laymen. To reach such a conclusion the court must surmise and conjecture within the prohibition of the evidence rules. *Symington v. Graham, supra.*

We have the medical testimony of the condition of the baby and what caused its death. The death or the dying of the baby caused the pain and suffering of the plaintiff and her miscarriage. But there is no medical testimony on a matter "peculiarly within the province of medical science", that is, what caused the maceration of the baby's body and the loss of the baby's brain tissue. It is a material part of the plaintiff's case to show that this was caused by the accident. The hospital doctor was asked by the court could he tell what was the cause of the stillbirth. He said he could not say definitely, only the probable cause. He was then asked what he would say was the probable cause, but an objection to this question was sustained. At that time no other witness had been examined, as the doctor was called first as a matter of convenience. There was no evidence of the nature or extent of the accident to the plaintiff from which he could have decided whether anything that happened to her at that time caused the miscarriage. He was not recalled after the evidence had been completed to give such testimony, and we cannot guess or assume what he would have said. The plaintiff testified to no injury other than the pain and suffering incident to the miscarriage. Her right of recovery therefore depends upon the connection of the accident with the injury to

542

the baby. Since there is a complete failure on her part to supply this necessary link in the chain of evidence, we must conclude that the trial court should have found a verdict for both defendants for lack of legally sufficient evidence against them.

> *Judgment for appellee, Admiral Taxi Service, Inc., affirmed, judgment against appellant reversed, and judgment entered in favor of Superior Transfer Company against Bertha Halstead for costs. All costs here to be paid by Bertha Halstead, appellee.*