## BAUGHMAN CONTRACTING COMPANY ET AL. v. MELLOTT

[No. 161, September Term, 1957.]

280

Decided April 1, 1958.

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*W. Earle Cobey,* with whom was *C. William Gilchrist* on the brief, for appellants.

*William L. Wilson,* with whom was *Edward J. Ryan* on the brief, for appellee.

BRUNE, C. J., delivered the opinion of the Court.

This is an appeal under the Workmen's Compensation Act by the Employer and Insurer from an order of the Circuit Court for Allegany County entered on the verdict of a jury awarding the claimant-appellee compensation for sixty per cent permanent partial disability arising from an injury suf-

fered when in the employ of the Baughman Contracting Company ("Baughman") on the 16th day of November, 1955. This judgment reversed the award of the State Industrial Accident Commission which had found that appellee's disability due to this injury was only five per cent.

The appellants urge two grounds for reversal of the order: one, that there was no legally sufficient evidence to show that the claimant sustained a permanent partial disability from the accident in question; the other, that there was no legally sufficient evidence to show that the Commission's award for such disability attributable to this accident was incorrect. We shall take these questions up in the order stated.

The facts, as brought out by the testimony, are essentially these: At the time of the trial below the appellee was a man of 59 years of age. For the last 24 years he has done laboring work for road construction companies. On October 10, 1952, while working for the Wright Contracting Company at Laurel, Maryland, the appellee was struck in the back at the belt line by a tree being dragged by a bulldozer. As a result of this injury the appellee was unable to work for some two and a half years thereafter. In 1954 he went to Dr. F. A. G. Murray and complained of numbness and pain in the right leg and numbness of the back. Dr. Murray had x-rays taken of the appellee which showed no bone or joint injuries but gave some evidence of a degenerative arthritis. On the basis of his diagnosis Dr. Murray submitted a report that the appellee had a 50% permanent disability of traumatic origin. The appellee then settled with Wright Contracting Company his claim for permanent partial disability.

In April of 1955 the appellee returned to his old occupation of road construction work. He testified that the back injury of October 10, 1952, gave him some discomfort when he first returned to work, but soon went away. In October, 1955, he went to work for Baughman. On November 16, 1955, the appellee, while lifting a piece of pipe, lost his footing and fell backwards onto a pile of rocks. Although his back bothered him, he continued to work for an additional week before quitting. Shortly thereafter the appellee saw Dr. Murray and complained of a pain centered in the vicinity

of the coccyx or "tailbone" at the end of his spine, and of pain and numbness in his legs.

While not regularly employed since the accident, the appellee has hauled wood and coal and delivered it to customers. He unloaded the coal himself by means of a long shovel because the pain in his back prevented him from stooping. The appellee was offered a job in road construction shortly before the time of the trial, but said that he refused to take it "because I ain't in shape to go down there" and because he could not afford to pay the transportation costs to the job.

The only medical testimony offered by the appellee was that of Dr. Murray. The gist of the appellants' first contention is that the testimony of Dr. Murray as to the permanence of the injury was so contradictory as to be worthless and that both his and the claimant's testimony as to the cause of the alleged disability were too vague to have any probative value. Therefore, the appellants say, there was not sufficient evidence to go to the jury on the question of either the cause or the permanency of the disability.

During cross-examination Dr. Murray admitted he had been wrong in his opinion as to the permanency of the 1952 injury. He stated that "I didn't think it was going to be possible for him to do it [work]—because I thought his back would be too bad and he wouldn't be able to do that heavy kind of work. * * * His back must have healed. It must have healed up for him to be able to do that sort of work."

When Dr. Murray was asked on cross-examination whether he thought that the appellee's present injury was permanent, he said: "I can't tell you, I don't know." On redirect examination he was asked: "Is it your opinion the condition he is suffering from now is permanent?", to which he answered, "Yes, sir." However, on recross-examination Dr. Murray was asked, "And you might find out that you are wrong, that he is not permanently disabled?", to which he answered, "Yes, sir. He might be able to work, I don't know." To the further question, "So you can't state definitely now whether he is permanently disabled or not?" Dr. Murray replied, "I cannot say whether he is absolutely for all time permanently disabled."

Dr. Murray's opinion was far from positive, but he did state his opinion that the claimant's injury from the 1955 accident was permanent. The fact that he had been wrong before in his opinion as to the permanence of a back injury sustained by this claimant doubtless added to his caution. He also testified that there was more than merely the subjective complaints of the appellee to show that the injury sustained while working for Baughman was the cause of the appellee's disability. The appellee himself insisted that this injury was to a different part of his spine from that injured in his 1952 accident and that the 1955 injury was the cause of his disability. Dr. Murray's testimony was a good deal stronger than the testimony held insufficient in *Ager v. Baltimore Transit Co.*, 213 Md. 414, 132 A. 2d 469, where a physician stated merely that the presence of a disc injury could not be ruled out. We think that the evidence was sufficient to warrant the submission of the issues of cause and permanence of disability to the jury. The question before us is not whether we should have reached the same conclusion on the evidence as that arrived at by the jury, but whether there was legally sufficient evidence, if believed, to enable the jury to make the findings which it did make. As to the duty of the trial court with regard to submitting a case such as this to the jury, see *Bethlehem-Sparrows Point Shipyard, Inc. v. Scherpenisse*, 187 Md. 375, 383-384, 50 A. 2d 256, which, we think, sustains the action of the trial judge here.

Dr. Murray's opinion testimony as to the claimant's injury and the extent of disability attributable thereto, falls within the rule stated in the *Scherpenisse* case (187 Md. at 379-380) that "a medical expert is not barred from expressing an opinion merely because he is not willing to state it with absolute certainty." On the matter of causation, too, we think that the *Scherpenisse* case supports the submission of that question to the jury, and that the evidence with regard thereto was sufficient to meet the test stated in *Reeves Motor Co. v. Reeves*, 204 Md. 576, 581, 105 A. 2d 236, that in compensation cases "proximate cause means that the result could have been caused by the accident and no other efficient cause has intervened between the accident and the result."

The appellants' other contention is that the issue of the extent of any permanent partial disability should not have been submitted to the jury because there was no legally sufficient evidence to show that the award of the Commission was incorrect. Its award was 5%; the jury's finding was 60%.

This contention is based upon *Egeberg v. Maryland Steel Products Co.*, 190 Md. 374, 58 A. 2d 684; *Allen v. Glenn L. Martin Co.*, 188 Md. 290, 52 A. 2d 605; and *Townsend v. Bethlehem-Fairfield Shipyard, Inc.*, 186 Md. 406, 47 A. 2d 365. All of these cases arose before the passage of Ch. 895 of the Acts of 1947, which amended what is now Section 36 of Article 101 of the 1957 Code (Section 48 of the 1939 Code, Section 35 of the 1951 Code). The appellants claim that the rule recognized by these cases involving the so-called "Other Cases" provisions of the Section referred to was not altered by the 1947 amendment, and that an indication to the contrary in *Bonner v. Celanese Corporation of America,* 195 Md. 9, 72 A. 2d 686, was not necessary to the decision of that case (which was governed by the pre-1947 law) and was erroneous. We do not agree.

Prior to 1947 the Workmen's Compensation Act provided that in "other cases" than those enumerated under the caption "Permanent Partial Disability" where the nature of various injuries and the compensation to be awarded therefor were specifically set out, the compensation should be 50% of the difference between the employee's average weekly wages and his wage-earning capacity after the accident, if less than before, but not to exceed a certain amount per week, "payable *during the continuance of such partial disability,* but not to exceed three thousand dollars [under the 1939 Code, later increased], and, subject to reconsideration of the degree of such impairment by the Commission on its own motion or upon application of any party in interest." (Italics supplied.)

As was pointed out in the *Townsend* case, the long continued construction of this Section as to "Other Cases" had been that the Commission could make an award for permanent partial disability in such weekly amount and for such number of weeks that the total compensation payable might be less than the maximum aggregate sum authorized, notwith-

standing that the permanent partial disability might continue after all of the payments awarded by the Commission had been made. The amount of the award made by the Commission under the "Other Cases" clause was held to be within the discretion of the Commission and not subject to review on appeal, except "to determine whether the award bore a reasonable relation to the injury suffered and was supported by substantial evidence." See *Bonner v. Celanese Corporation of America, supra,* 195 Md. 9, 13, from which this quotation is taken and Judge Henderson's comments there on the *Townsend, Egeberg* and *Allen* cases.

An examination of the opinion in the *Townsend* case, which was rendered in May, 1946, and of the 1947 amendment leads us to believe that a change in the law with regard to this matter was intended and accomplished by the 1947 Act. Chief Judge Marbury made a thorough review of the cases dealing with this question and a thorough analysis of the problems involved. Among other matters which he referred to was a suggestion that "the Commission has made a practice of awarding the maximum weekly amount in each case and has indicated the percentage of loss of wage-earning capacity found by the percentage of the maximum given as the limit of the particular award." The Court said: "If this is true, it is wrong under the statute, and has the effect of preventing an appeal by the claimant." (186 Md. at 421.) On the record before it the Court declined to assume that such a method had been adopted in that case.

The 1947 amendment, the general pattern of which has continued to be followed since then (with some changes as to amounts), established as the basis for awards under the "Other Cases" clause just what had not previously been permitted—that is, it required a determination of the percentage of bodily disability and the making of an award "in such proportion as the determined loss bears to compensation allowable for total permanent disability * * *."

We think that the "indication" of the *Bonner* case was clearly correct and that under the "Other Cases" clause as in force since the 1947 amendment, the issue of the extent of permanent partial disability was one which was properly

submitted to the jury with a proper instruction (which was given) as to the presumption in favor of the finding of the Commission.

*Order affirmed, with costs.*