ATLAS GENERAL INDUSTRIES, INC.,
ET AL. *v.* PHIPPIN

[No. 373, September Term, 1963.]

82

84

*Decided July 24, 1964.*

The cause was argued before Brune, C. J., and Hammond, Prescott and Horney, JJ., and Rutledge, J., Associate Judge of the Fourth Judicial Circuit, specially assigned.

*Gilbert A. Hoffman* and *A. Douglas Owens,* with whom was *Eugene A. Edgett, Jr.* on the brief, for appellants.

*Morton J. Owrutsky* and *Herman E. Perdue* for appellee.

Brune, C. J., delivered the opinion of the Court.

This is an appeal by the employer and insurer from a judgment of the Circuit Court for Somerset County confirming the findings and order of the Workmen's Compensation Commission awarding the claimant, Phippin, compensation for permanent total disability, without apportionment of disability to any pre-existing disease or infirmity.

There is no dispute about the fact that on February 8, 1961, the claimant, while engaged in the performance of his duties as a night watchman for the employer, slipped on some ice, fell and broke his left leg. Some of the injuries upon which the appellee bases his claim of permanent total disability were to his leg and are admittedly due to the accident, but are said by the appellants to amount to less than total disability. Others, which involve the claimant's neck, left shoulder and arm, the appel-

lants contend are not causally connected with the accident, and they contend that they were entitled to a directed verdict as to this matter. They also contend that the first issue submitted to the jury was improperly phrased, that the issue of causal connection should have been submitted to the jury before that of permanent total disability, and that the issue of apportionment of disability between that attributable to the accidental injury in February, 1961, and that attributable to pre-existing disease or infirmity should have been submitted to the jury for determination in accordance with § 36(7) of Article 101 of the Code (1957 Ed.).

Immediately after his fall on February 8, 1961, the claimant crawled to a place where he could get help and he was then taken to the Peninsula General Hospital in Salisbury. There his fractured leg was set and a pin was put in it to hold the broken pieces together. While at the hospital he was under medication for pain, and was completely immobilized for some time. He was sent home by ambulance on February 22nd, but had to have a hospital bed and a wheel chair. He used the chair for about two weeks, but found that he had numbness in the fingers of his left hand and could not turn the wheel of the chair with that hand. He testified that his left arm and shoulder began to bother him when he went home, but that at first he said nothing about it, thinking that the pain would go away. Possibly his immobilization at the hospital may have delayed his noticing the arm and shoulder pains.

The claimant did testify that about March 1st he telephoned to Dr. Fisher, who was in charge of his case, complaining of pain in his shoulder and that a prescription for a pain reliever given him on March 1st (as shown by the records of a pharmacy) was for the pain in the shoulder. When he tried to use crutches when he gave up the wheel chair, he had to have the handle of one of them wrapped in foam rubber so that he could grip it with his left hand. During the month of March the claimant received several injections for his shoulder pains, but the pains continued and atrophy of his left arm muscles became apparent. He first saw Dr. Briele, who was associated with Dr. Fisher, on March 22, 1961. (Dr. Fisher died before the trial.)

When Dr. Briele first saw Phippin, he made a note that Phippin had arthritis in his left shoulder.

Phippin continued to have pain in his neck, shoulder and arm. In May, 1961, Dr. Fisher referred him to a neurosurgeon from Baltimore, Dr. Arnold, who then examined Phippin at a clinic in Salisbury. About a month later Phippin was sent to the University Hospital in Baltimore where Dr. Arnold performed an operation on his cervical spine and decompressed a nerve root. The patient appeared to improve for a few days, but an almost complete paralysis of the deltoid muscle ensued. The operation had not been performed at the point where the nerve controlling the deltoid entered the spine. The surgeon suspected that a tumor above the collar bone might have affected "the plexus which would involve all these roots." However, no such tumor was shown to exist. Dr. Arnold, relying to a large extent upon the lapse of time between the accident and the time of Phippin's first complaint about his arm and shoulder, stated that he did not see any causal relationship between the accident and the trouble with Phippin's arm. He also testified that he did not know what was wrong with the arm.

When the claimant was discharged from the Baltimore hospital he returned to his home and went under the care of his physician, Dr. Schlesinger, who is an internist of extensive experience, but is not a surgeon. He first examined Phippin in January, 1962, and found atrophy of the left shoulder girdle, left arm and also a marked wasting of the left buttock. Phippin was suffering a good deal of pain and had difficulty in sleeping, according to the history which he gave to Dr. Schlesinger. He thought that arthritis was not a factor in Phippin's condition. He was of the opinion that Phippin was a hundred per cent disabled.

Phippin testified that he did not know just how he fell, but that he fell on his left arm and side. The breaking of his leg seems to have been the only injury of which he was then aware. Dr. Schlesinger stated that it was his opinion that "when Mr. Phippin fell, there was either a downward force applied to the shoulder, or else a twisting force applied to the shoulder, so that the group of nerves or the nerve complex we call the bra-

chialis plexus was pulled and damaged." He also testified as follows during cross-examination with regard to causal connection:

> "Mr. Phippin has told me that he was in good health —he has told me that he had a fall—that following the fall he had a broken leg—that within a period of weeks he began to develop atrophy and began to develop disability in his left shoulder.
> "To me I have a man who was healthy—he fell—I can't help but feel the fall was involved."

The next question and answer were these:

> "Q. Well, doctor, haven't you seen patients before where they have not had a fall but they were healthy and suddenly they became not healthy?
> "A. You go from health to illness just that way. But there was nothing to indicate that there was something other than the fall to cause this. At least, nothing that I have heard or been presented with."

We think that the trial court was correct in refusing the appellants' motion for a directed verdict in their favor on the question of causal connection between the accident and the injuries to the claimant's neck, shoulder and arm.

The question of causation here presented involves no such complex medical problem as that involved in *Jewel Tea Co. v. Blamble,* 227 Md. 1, 174 A. 2d 764 (a compensation case) or in one phase of *Wilhelm v. State Traffic Safety Comm.,* 230 Md. 91, at 100, 185 A. 2d 715 (a tort case), or in *Craig v. Chenowith,* 232 Md. 397, 194 A. 2d 78 (another tort case). Neither is the appellants' medical evidence of lack of causal connection here nearly so strong as that for the employer in the *Jewel Tea* case or that in favor of the defendant in the phase of the *Wilhelm* case just referred to, nor is medical testimony of causal connection lacking here, as it was held to be in the *Craig* case.

The jury was entitled to consider the testimony of the claimant and of his physician (*Mureddu v. Gentile,* 233 Md. 216, 220, 196 A. 2d 82), and the testimony was sufficient to meet the test of proximate causation under the Workmen's Com-

pensation Act recognized in this State "that the result could have been caused by the accident and no other efficient cause has intervened between the accident and the result." *Baber v. Knipp & Sons,* 164 Md. 55, 67, 163 A. 862; *Moller Motor Car Co. v. Unger,* 166 Md. 198, 206, 170 A. 777; *Bethlehem-Sparrows Point Shipyard, Inc. v. Scherpenisse,* 187 Md. 375, 385, 50 A. 2d 256; *Paul Construction Co. v. Powell,* 200 Md. 168, 185, 88 A. 2d 837; *Reeves Motor Co. v. Reeves,* 204 Md. 576, 581, 105 A. 2d 236 (rule stated, not found applicable); *Baughman Contracting Co. v. Mellott,* 216 Md. 278, 283, 139 A. 2d 852; *Bethlehem Steel Co. v. Jones,* 222 Md. 54, 58, 158 A. 2d 621. Since there was some medical testimony to support a causal connection between the accident and the injuries to the claimant's neck, shoulder and arm, we need not consider whether this was a case in which no medical testimony as to causation, in addition to lay testimony with regard thereto, would have been needed in order to take the case to the jury. We hold that the evidence was sufficient to warrant the submission to the jury of the question whether the injuries to the claimant's neck, arm and shoulder were caused by the accident.

The appellants' second and third contentions relate to the form of the issues submitted to the jury and may be considered together. The first issue, which the jury answered "yes," was this:

> "Is the claimant, Ambrose Phippin, permanently totally disabled as a result of the injuries to his neck, left shoulder, arm, left leg and hip, or either of them, arising from the accidental injury of February 8, 1961?"

The court instructed the jury that if the answer to that issue was yes, there was no need to answer the other issues. The second issue submitted questions as to whether the injuries to the claimant's neck were a result of the accident, and if so, what was the percentage of disability. The third issue submitted like questions as to the injuries to his left shoulder and arm, and the fourth issue as to the injuries to his left leg and hip.

We think that the first issue did not, as the appellants contend that it did, assume a causal connection between the acci-

dent and the injuries to the claimant's neck, shoulder and arm. On the contrary, we think that the wording of this issue as to whether the claimant was permanently totally disabled as a result of injuries * * * arising from the accidental injury of February 8, 1961" plainly imported that a causal connection between the accident and the disabling injuries would have to be found if the jury were to answer this issue "yes," and conversely that if no such connection were found, the answer would have to be "no." The second, third and fourth issues also laid stress on causation by very similar language to that used in the first issue. Furthermore, the court's oral instructions emphasized the issue of causation not only once but several times.

The court's instructions also defined permanent total disability substantially in accordance with the holdings of this Court in such cases as *Congoleum Nairn, Inc. v. Brown,* 158 Md. 285, 148 A. 220, and *Jewel Tea Co. v. Blamble, supra.* It is true, as the appellants point out, that there was no medical testimony which placed the claimant's disability due to the injuries to his leg and hip at more than 40%. However, there was evidence, including medical evidence, that because of those injuries and pain from them the claimant could not remain sitting for more than a short period of time and that he was consequently disabled from holding even a sedentary job. See *Mureddu v. Gentile, supra,* 233 Md. at 220. It was conceded that the leg and hip injuries were due to the fall. We cannot say that it was error to submit to the jury for its determination whether permanent total disability resulted or could have resulted from the injuries to the claimant's leg and hip, apart from the effect of the injuries to his neck, shoulder and arm. The award of the Commission, we note, was based specifically upon a finding of permanent total disability due to the injuries to the claimant's leg and hip resulting from the accidental injury of February 8, 1961, and it made no reference to any other injuries. Of course, the findings of the Commission were by statute prima facie correct and the burden of proof was on the appellants as the parties attacking the same. Code (1957), Art. 101, § 56 (c). The trial court properly so instructed the jury, and it follows from what we have already said that the jury could have found this burden not to have been met and the pre-

sumption of the correctness of the Commission's finding not to have been rebutted. The jury has been held entitled to make its own determination of the extent of disability, *Bethlehem Steel Co. v. Mayo,* 168 Md. 410, 177 A. 910; *Bethlehem-Sparrows Point Shipyard, Inc. v. Damasiewicz,* 187 Md. 474, 478, 50 A. 2d 799; and in some cases not involving complex medical problems non-medical proof that a disease or an injured condition followed an accident has been held sufficient to take to the jury the question of whether it resulted from the accident. See comments to this effect in *Superior Transfer Co. v. Halstead,* 189 Md. 536, 539, 56 A. 2d 706 (a tort case), and in *Paul Construction Co. v. Powell, supra,* 200 Md. at 180, and the following compensation cases cited in *Superior Transfer*: *Neeld Construction Co. v. Mason,* 157 Md. 571, 146 A. 748; *Cumberland & Allegany Gas Co. v. Caler,* 157 Md. 596, 146 A. 750; *Celanese Corp. v. Lease,* 162 Md. 587, 160 A. 801; *Baber v. Knipp & Sons, supra.* In the first three of these the claim was contra to the medical evidence, but was supportable (to borrow somewhat from the *Celanese* case, 162 Md. at 596) by a rational inference based upon common sense and common experience, which the jury was competent to draw. See also such tort cases as *Charlton Bros. Co. v. Garrettson,* 188 Md. 85, 94, 51 A. 2d 642; and *Wilhelm v. State Traffic Comm., supra,* 230 Md. at 103-106, as to that phase of the case involving depigmentation. As Judge Markell pointed out in the *Paul Construction* case, 200 Md. at 180-81, uncontradicted opinion evidence is not necessarily conclusive upon a jury. There are, of course, cases such as *Jewel Tea Co. v. Blamble, supra,* reaching an opposite result to that reached in the cases just cited, where expert testimony was held necessary to establish causal connection, as we have already noted.

In the instant case we conclude that the jury could draw its own rational conclusion as to the extent of the claimant's disability from the injuries to his leg and hip from the evidence before it without specific medical testimony to the effect that those injuries alone caused permanent total disability and in spite of some medical testimony to the contrary.

Since it is conceded that the leg and hip injuries were due to the accident, we do not encounter, as a practical question,

any problem with regard to the sufficiency of the injuries to the claimant's neck, shoulder and arm, and standing alone, to support a finding of permanent total disability. It necessarily follows from what we have already said that all the injuries which the claimant asserts were caused by the accident taken together would be sufficient to warrant the submission of the question of permanent total disability to the jury and to warrant its finding that there was such disability. We have already held that the question of causal connection of the neck, shoulder and arm injuries was properly submitted to the jury, and causal connection of the other injuries was admitted.

Though the issues could possibly have been better stated (and we note that in their brief the appellants suggest issues somewhat different in terms and in number from those which the record extract indicates they submitted to the Circuit Court), we think that the first issue was sufficiently stated and that there was no confusion or other prejudicial error in that issue or in the other issues as submitted.

The appellants' final contention, not precisely in their words but as we understand it, is that even if the claimant is unable to perform work of any kind, his disability should be apportioned between (a) that attributable to the injuries sustained in the accident of February 8, 1961, (b) that attributable to pre-existing disease or infirmity, and (c) that attributable to any non-causally related disability. This contention has different aspects.

We find no clear evidence that the claimant's troubles with his neck, shoulder and arm were due to arthritis. Dr. Briele's evidence showed that Phippin did have arthritis in his left shoulder in March, 1961, but the neurosurgeon who operated on him in June of that year made no finding that arthritis was then the cause of his trouble with his arm and stated that he did not know what was. Neither does Dr. Briele's testimony identify it as the cause of the atrophy of Phippin's muscles in the arm and shoulder region which resulted substantially in the loss of use of his arm. Dr. Schlesinger did not regard arthritis as a factor in Phippin's disability.

In their brief the appellants point out "that there was medi-

cal testimony stating the claimant had some pre-existing arthritis." They then say: "Dr. Briele stated that he could not relate or distinguish between the injury of the buttocks to either arthritis or the accidental injury." The evidence upon which this assertion seems to be based (its wording is not a quotation) is not even included in the record extract. A search of the transscript shows that the doctor testified in substance that he could not make any apportionment of the wasting of the buttock or of disability resulting therefrom as between arthritis and the accidental injury. Yet the appellants urge that the court should have instructed the jury to make such an apportionment.

We think that both the evidence as to arthritis being the cause of the claimant's disability in his neck, shoulder and arm and the evidence upon which the appellants sought an apportionment of disability due to the wasting of the left buttock as between arthritis and accidental injury were too vague and speculative to call for the submission to the jury of any issue based thereon. Cf. *Ager v. Baltimore Transit Co.*, 213 Md. 414, 132 A. 2d 469; *Craig v. Chenowith, supra* (both tort cases involving medical testimony).

This leaves for consideration that portion of the appellants' contention on apportionment which relates to non-causally connected injuries. It appears from the appellants' brief that their argument for giving an instruction on the apportionment of disability as between the injuries to the leg and hip and those to the neck, shoulder and arm is based upon their contention that no causal connection between the accident and the latter group of injuries was shown (a contention which we have not accepted). It also rests upon the premise that the jury could not have found permanent total disability unless the injuries to the neck, shoulder and arm were taken into consideration (another view which we have not accepted). If, however, this last premise were correct, it would seem that the jury did find a causal connection; and we have already held that the jury was entitled to do so. In these circumstances, if there were any error in refusing to give this instruction, we think that it would not have been prejudicial.

*Judgment affirmed; the appellants to pay the costs.*