998 F.2d 1008
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
v.
Douglas Lymont BLAKE, Jr., an infant who sues by and through
his mother and next friend, Pamela F. Blake,
Plaintiff-Appellant,
Robert S. JUSKEVICH, M.D., F.A.C.O.G.; Doctors Knispel,
Dibona & Juskevich, P.C., Defendants-Appellees.
 No. 92-2514.
 United States Court of Appeals,
Fourth Circuit.
 Argued: May 3, 1993.
Decided: July 28, 1993.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Rebecca B. Smith, District Judge. (CA-90-1713-N)
 S. D. Roberts Moore, Gentry, Locke, Rakes & Moore, Roanoke, Virginia, for Appellant.
 Carolyn Porter Oast,Heilig, McKenry, Fraim & Lollar, Norfolk, Virginia, for Appellees.
 Melissa Warner Scoggins, Gentry, Locke, Rakes & Moore, Roanoke, Virginia; John E. Tantum, Tantum, Hamrick & Jordan, Knightdale, North Carolina, for Appellant.
 John A. Heilig, Heilig, McKenry, Fraim & Lollar, Norfolk, Virginia, for Appellees.
 E.D.Va.
 AFFIRMED.
 Before ERVIN, Chief Judge, and MURNAGHAN and NIEMEYER, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 Douglas Lymont Blake, Jr. ("Blake"), by and through his mother, appeals the district court's order granting Dr. Robert S. Juskevich's motion for a directed verdict. The district court held that there was insufficient evidence for this medical malpractice action to go before the jury. Blake raises three issues on appeal: (1) whether the district court erred by ruling that an expert witness's testimony should have been excluded; (2) whether the district court's exclusion of evidence prejudiced Blake because the case could not proceed to a jury; and (3) whether the district court erred in determining that the proffered testimony was insufficient to go to the jury. Finding no merit in these issues, we affirm.
 
 
 2
 * This is the second occasion that this medical malpractice action has been before this court. A detailed description of the underlying facts is set out in Blake v. Juskevich, No. 91-2163, Slip op. at 3 (4th Cir. Apr. 10, 1992). Therefore, we discuss here only those facts particularly relevant to this appeal.
 
 
 3
 Blake claims that Dr. Juskevich committed medical malpractice in Dr. Juskevich's delivery of him. Mrs. Blake, the infant's mother, went into labor on November 23, 1979. The labor was very difficult; Dr. Juskevich used a forceps procedure to hasten delivery. Blake was born with a condition known as dystocia, which resulted in one shoulder and one arm being permanently disabled.
 
 
 4
 Blake filed suit against Dr. Juskevich alleging medical malpractice during the course of the delivery. A jury found for Dr. Juskevich and Blake appealed. We reversed the district court on the ground that it had erred in permitting certain closing arguments, id. at 3, and remanded the case for a new trial.
 
 
 5
 On remand, Blake's expert witness became sick and was too ill to testify. Blake instead offered Dr. Jeffery Bennett as his expert witness regarding the method of delivery and the applicable standard of care. Dr. Bennett is a practicing board certified obstetrician and gynecologist in Miami, Florida who serves as a fellow on the American Board of Obstetrics and Gynecology. Through his status as a fellow with that organization, Dr. Bennett is qualified to practice in thirty-six states, including Virginia. He had obtained a Virginia medical license in 1990.
 
 
 6
 Dr. Juskevich challenged Dr. Bennett's qualifications as an expert witness. He questioned Dr. Bennett as to his knowledge of the standard of care in Virginia in 1979 for this type of delivery and the need for a caesarean birth. Dr. Bennett testified that he knew the standard of care in Virginia in 1979 because of his contacts with Virginia physicians through the American College of Obstetrics and Gynecology. Outside the presence of the jury, he further testified regarding Blake's delivery. Dr. Bennett stated that it was more probable than not that Blake's injuries were due to the procedures used by Dr. Juskevich. He testified that it was possible that improper traction was used during the delivery.
 
 
 7
 Dr. Juskevich moved to exclude Dr. Bennett's testimony on the ground that Dr. Bennett was not entitled to the presumption that he knew the applicable standard of care for delivering babies in Virginia in 1979. The district court granted Dr. Juskevich's motion to exclude the testimony from jury consideration. It determined that Dr. Juskevich had demonstrated that Dr. Bennett was not knowledgeable of the Virginia standard of care in 1979 and that Dr. Juskevich had rebutted the statutory presumption that he was qualified to testify as an expert in this case.
 
 
 8
 Furthermore, the district court granted Dr. Juskevich's motion for a directed verdict, holding that Blake had adduced insufficient evidence to go to the jury. The district court ruled that Dr. Bennett's testimony as to circumstances and events surrounding Blake's birth had not met the standard of certainty required by this court. This appeal ensued.
 
 II
 
 9
 We will address only Blake's third assignment of error because it is dispositive of the case. Blake contends that the district court erred by ruling that Dr. Bennett's testimony was insufficient to go to the jury. The district court held:
 
 
 10
 I would grant the motion for a directed verdict based upon Dr. Bennett's testimony just now before the court. He said that he could not determine the correctness of certain procedures with a reasonable degree of medical certainty. Dr. Bennett testified more probably than not. That is not the standard.
 
 
 11
 Blake argues that the district court's ruling was erroneous because Dr. Bennett premised all of his responses with a reasonable degree of medical certainty. This is an exaggeration of the record.
 
 
 12
 This court has adopted a stringent standard for admitting expert medical opinions. See Fitzgerald v. Manning, 679 F.2d 341, 351 (4th Cir. 1982). In Fitzgerald, we held that
 
 
 13
 in order to qualify on causation, the opinion testimony may not be stated in general terms but must be stated in terms of a 'reasonable degree of medical certainty....' Only if the opinion evidence on causation, as offered by the plaintiff, rises to the level of 'a reasonable degree of medical certainty' that it is more likely that the defendant's negligence was the cause than any other cause, is there sufficient evidence on causation to permit jury submission of causation.
 
 
 14
 Id. (citations omitted ). This requirement aids in ensuring that when expert opinion is taken as fact by the jury, it is relying on legally competent evidence.
 
 
 15
 In the instant matter some of Dr. Bennett's conclusions regarding the procedures used in Blake's delivery were not stated with a reasonable degree of medical certainty. On several occasions in response to Blake's questions, Dr. Bennett answered that he could not be reasonably certain of his medical conclusions. When Blake asked Dr. Bennett's opinion on whether he would have had a normal arm if a caesarean section had been preformed, Dr. Bennett responded "[m]ore probable than not, this injury would not have occurred." In response to whether fundal pressure was applied improperly, Dr. Bennett stated "I cannot say with certainty, but I believe it attributed to this, further impacted the anterior shoulder." When questioned whether the deviation from the standard of care contributed to Blake's injury, Dr. Bennett responded: "Again I can't say with certainty; more probable than not, yes." These responses fall below the standard required by this court.
 
 
 16
 This is not a case where an expert witness fails to say the magic words "reasonable degree of medical certainty," but a situation where a medical expert witness was not sure of his conclusions. If a doctor serving as an expert witness cannot state his medical opinions with a reasonable degree of certainty, then a jury should not be allowed to rely upon them in reaching its decision. Expert witnesses' opinions are critical in medical malpractice cases; a direct, unequivocal expression of their opinion is necessary to constitute legally competent proof.
 
 III
 
 17
 The district court did not err in granting the motion for a directed verdict based upon a failure to present sufficient evidence to go to the jury. It properly concluded that Dr. Bennett had failed to state his conclusions to a reasonable degree of medical certainty. Since the case was correctly dismissed, we need not reach the remaining two issues presented. Therefore, the decision of the district court is
 
 
 18
 AFFIRMED.