**Michael E. PUPKAR, Plaintiff,**

v.

**Gonzalo TASTACA, et al., Defendants.**

**No. Civ. A. AMD 97–2235.**

United States District Court,
D. Maryland.

March 31, 1998.

Eugene I. Glazer, Baltimore, MD, for Plaintiff.

No appearance for Gonzalo Tastaca and Gaby Tastaca.

Daniel Karp, Allen, Johnson, Alexander & Karp, Baltimore, MD, for Defendants.

### ORDER

DAVIS, District Judge.

This is a personal injury action arising out of a three-vehicle, chain-reaction collision which occurred on August 5, 1994, on Interstate 95 in Maryland. Pending before the court is a motion by defendant Lyric D. Jackson for summary judgment on the ground that at the time the plaintiff filed his

complaint in this court on July 11, 1997, he knew to a legal certainty that his claim did not satisfy the $75,000 jurisdictional amount required of diversity cases under 28 U.S.C. § 1332. The issue has been fully briefed and no hearing is necessary. Local Rule 105.6 (D.Md.1997). The motion shall be granted, and the case dismissed for lack of jurisdiction.

There is no *genuine* dispute of material fact. The accident occurred on a rain-slickened roadway. Plaintiff was in the lead car and his vehicle was struck twice. Plaintiff claims to have suffered soft tissue injuries to his neck and back. The cost to repair the damage to plaintiff's vehicle, a total of $1288.41, has been paid in full by the various defendants (or their insurers) and property damage is not a part of plaintiff's claim in this court.

Shortly after the accident, plaintiff obtained a modicum of medical treatment from his government-sponsored health care provider, consisting of four visits for physical therapy and two office visits. The medical costs (for treatments and/or visits on the following dates: August 3, September 1, October 6, 1994, and March 8, 1995) totaled $534. (No explanation is offered as to how plaintiff could have been treated on August 3, 1994, for an injury he allegedly received in an accident which occurred on August 5, 1994.). No further treatment for any injury allegedly related to the August 1994 accident was obtained, or expenses incurred, until February 1996. The total medical expenses now said to relate to the accident in suit equal $4,208.

The record shows that as early as 1984, plaintiff suffered from back and neck problems for which he sought and received treatment at the same chiropractic clinic which undertook treatment of him (starting in 1996) for the accident in suit. In addition, the record shows, and plaintiff does not dispute, that he was involved in another motor vehicle accident in 1994, as well as one in 1990 in which he was hit "head-on," and that he underwent back surgery in 1992 or 1993.

Defendant's motion focuses upon the absence in the record of expert opinion evidence casually connecting plaintiff's post-1995 complaints and treatments to the accident in suit "to a reasonable degree of medical probability." Plaintiff does not dispute that Maryland law imposes upon him such a burden [1]; rather, plaintiff urges that he is entitled to await the trial on the merits to produce such evidence.

Indeed, the only "evidence" plaintiff relies upon in opposition to the motion for summary judgment consists of the plaintiff's Fed. R .Civ.P. 26(a)(2) disclosure, which identifies a non-treating Baltimore-area physician who has never even examined the plaintiff, but whom plaintiff "reserves the right to call" as an expert. This physician "will testify from a review of [p]laintiff's medical records, reports and bills ... as to the nature and extent of the [p]laintiff's injuries ... [including] the causation of his injuries." *See* Attach. to Pl's Resp. Opp. Mot. Dism. or Alt. Summ. Judg. The disclosure document goes on to recite that plaintiff's "treating physicians have diagnosed the [p]laintiff as having sustained the following injuries: right cervical radiculopathy, posterior laminectomy syndrome, right-sided disc herniation, central disc bulge at C4–C5, central disc bulge at C5–C6 with spinal stanosis and right lateral epicondylitis and strains to his neck and/or low back." It is manifest, however, that this elaboration is not a paraphrase of an opinion held to a reasonable degree of medical probability as to the consequences proximately caused by the accident in suit, but rather is an all-but-exhaustive catalogue of plaintiff's 13– or 14–year history of diagnoses for myriad episodes of trauma, and of demonstrated natural degeneration.

Specifically, when asked to render an opinion as to the cause of plaintiff's "neck problems" his treating physician (in North Carolina) responded in December 1997: "*I presume* that Michael Pupkar's neck problems are casually related to his automobile accident August 5, 1994 *as that is what he and his wife tell me.*" (emphases supplied).

---

**1.** There is no appellate court opinion in Maryland that has held that the mantra "within a reasonable degree of medical probability" is absolutely required before each and every medical expert opinion. It is understood, however, that "[t]hese wooden phrases are required to make sure that the expert's opinion is more than speculation or conjecture." J. Mur-

phy, *Maryland Evidence Handbook*, § 1404 (2d ed.1993). Furthermore, appellate courts have made clear that expert testimony based upon anything *less* than a reasonable degree of probability may be properly excluded.

*Karl v. Davis,* 100 Md.App. 42, 53, 639 A.2d 214, *cert. denied,* 336 Md. 224, 647 A.2d 444 (1994).

In an undated supplement to that document, the doctor added: "It was brought to my attention Michael Pupkar was in another accident in 1994. *It is possible that his neck problems could have resulted from that accident.*" (emphasis supplied). It is striking that, even apart from the unique jurisdictional amount issue present in a federal diversity of citizenship setting, plaintiff does not remotely suggest that this "evidence" is sufficient under Maryland law to permit a rational juror to conclude by a preponderance of the evidence that *any* of his post–1995 complaints were proximately caused by the August 1994 accident.

In any event, all acknowledge that ordinarily, it is the rule in cases presenting claims for unliquidated damages, including garden-variety tort claims for personal injuries, that the plaintiff's allegation of the amount in controversy is entirely controlling for purposes of a federal court's subject matter jurisdiction under the diversity statute. *See generally Barbers, Hairstyling for Men & Women, Inc. v. Bishop,* 132 F.3d 1203, 1205 (7th Cir.1997) ("Accepted wisdom has it that, when deciding whether a claim meets the minimum amount in controversy, the plaintiff's evaluation of the stakes must be respected."). Here, plaintiff claimed personal injury damages of $1,000,000. It is abundantly clear that that figure was not claimed in good faith; however, that is not the essential question posed by the pending motion for summary judgment.

The question presented is whether defendant has established as a matter of law that plaintiff *necessarily acted in bad faith in seeking at least $75,000* (the relevant jurisdictional amount), and thus in filing this action in federal court. I have no hesitation in agreeing with defendant that bad faith is demonstrated as a matter of law on this record. The relevant case law and scholarly commentary make it clear that, even as to claims for unliquidated amounts for injury to the person, the "legal certainty" test announced in *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938), may appropriately be

applied to dismiss a case improperly brought in federal court. *Tirado–Toro v. Builder's Square, Inc.,* 986 F.Supp. 714, 716–17 (D.P.R. 1997) (premises liability claim; plaintiff tripped and hit head, incurring wound taking 14 stitches); *Sansone v. Ocean Acc. & Guarantee Corp., Ltd.,* 228 F.Supp. 554, 556–57 & n. 2 (E.D.La.1964) (personal injury claims arising from alleged motor tort) (collecting cases); *Lynn v. Smith,* 193 F.Supp. 887, 894 (W.D.Pa.1961) (malicious prosecution claim), *cited with approval in relevant part in Packard v. Provident Nat. Bank,* 994 F.2d 1039, 1046 (3rd Cir.), *cert. denied sub. nom. Upp v. Mellon Bank, N.A.,* 510 U.S. 964, 114 S.Ct. 440, 126 L.Ed.2d 373 (1993); *and see City of Boulder v. Snyder,* 396 F.2d 853, 856 (10th Cir.1968) (dismissing for lack of jurisdiction after trial) ("The denial of costs under authority of 28 U.S.C. § 1332(b) is an appropriate and adequate remedy in certain instances but when, as here, a failure of proof of damage is so complete as to dictate the conclusion that resort to federal jurisdiction has been abused the proper disposition of the suit is dismissal."), *cert. denied,* 393 U.S. 1051, 89 S.Ct. 692, 21 L.Ed.2d 693 (1969). *See* 14A Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction and Related Matters* § 3702 (2d ed. 1985 & 1997 Supp.).

I am satisfied that, on the basis of the summary judgment record before me, to a "legal certainty, jurisdiction is lacking." *St. Paul Mercury Indem. Co.,* 303 U.S. at 289; *Horton v. Liberty Mutual Ins. Co.,* 367 U.S. 348, 353, 81 S.Ct. 1570, 6 L.Ed.2d 890 (1961). Accordingly, it is this 31st day of March, 1998, by the United States District Court for the District of Maryland, ORDERED

(1) That Defendant Jackson's motion for summary judgment is GRANTED AND THIS CASE IS DISMISSED WITHOUT PREJUDICE [2]; and it is further ORDERED

(2) That Plaintiff's Motion for Sanctions is DENIED; and it is further ORDERED

(3) That the Clerk CLOSE THIS CASE and MAIL a copy of this Order to counsel.

---

**2.** The Clerk's docket reflects that defendants Gonzalo Tastaca and Gaby Tastaca have never been served; I would, therefore, ordinarily dismiss as to them under Fed.R.Civ.P. 4(m). In light of the grant of the motion for summary judgment filed by defendant Jackson, however, it is clear that the court lacks jurisdiction over the

subject matter of the action. Thus, I need not and do not determine whether the Tastaca defendants remain amenable to suit in state court. *See* Md. Rule 2–101(b) (providing that limitations period is tolled for 30 days in an action that, though timely-filed in federal court, is dismissed, *inter alia,* for lack of jurisdiction).