**Michael J. SAMUEL, et al.**

v.

**FORD MOTOR COMPANY, et al.**

**No. CIV. A. WMN–96–2155.**

United States District Court,
D. Maryland.

Sept. 1, 2000.

Andrew Greenwald, Steven Pavsner, Joseph, Greenwald & Laake, P.A., Greenbelt, MD, Michael Barrett, Wilentz, Goldman & Spitzer, Woodbridge, NJ, for plaintiffs.

William Conroy, Cabaniss, Conroy & McDonald, LLP, Wayne, PA, Paul Strain, Venable, Baetjer & Howard, Baltimore, MD, for defendants.

## Memorandum and Order

GRIMM, United States Magistrate Judge.

The Plaintiffs filed suit against Ford, among others, on July 12, 1996, alleging a variety of product defect claims. They assert that the 1993 Ford Aerostar van is defective, and unreasonably dangerous, because it has a propensity to roll over. In this case, the Aerostar in which the Plaintiffs were riding rolled over after it was struck by Defendant Hamilton's Ford Econoline van, resulting in the death of Mr. Michael Samuel's wife, Alicia, and their infant child, as well as serious injuries to the Bergers, who also were occupants.

After an extended period of discovery, this case went to trial on May 15, 2000. The trial lasted five weeks. The Plaintiffs maintained claims against Ford on the basis of design defect under strict liability and negligence; failure to warn under strict liability and negligence; and breach of warranty. The Court dismissed the Plaintiffs' failure to warn claims on June 16, 2000, granting a motion made by Defendant Ford pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. (Paper No. 343.) The Jury returned a verdict in favor of Ford on all the other claims on June 20, 2000.

The Plaintiffs timely filed a motion for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure. (Paper No. 354.) Defendant Ford filed a response, and the Plaintiffs replied. (Paper Nos. 357 and 359.)

The Plaintiffs allege that they are entitled to a new trial because six errors were committed during the trial: 1) the Plaintiffs' failure to warn claims should not have been dismissed; 2) the opinion testimony of the Defendant's expert, Lee Carr, should have been stricken because it was not stated to a reasonable degree of engineering certainty; 3) the Plaintiffs' evidence of accident avoidance maneuver testing should have been admitted; 4) Defendant's expert Lee Carr should not have been permitted to present evidence of "other accidents"; 5) Defendant's expert Lee Carr should not have been permitted to present evidence of rim bending tests he preformed; and 6) the Plaintiffs should

have been allowed to present certain additional evidence regarding their spoliation claims.

For reasons stated below, the Plaintiffs' Motion for a New Trial is **DENIED**. Most of the issues raised by the Plaintiffs were addressed by the Court in great detail before and during the trial. Only the second error alleged, regarding the requisite degree of certainty of Lee Carr's testimony, needs to be addressed in detail.

**Dismissal of Plaintiffs' Failure to Warn Claims**

■ The Plaintiffs' failure to warn claims were the subject of numerous motions before trial. (Paper Nos. 211, 246, 260, 274, 276, 287, 296, 302 and 305.) Defendant's motions to dismiss these claims originally were denied without prejudice, (Paper No. 312), and the Plaintiffs presented evidence to support their failure to warn claim at trial. During trial, Ford moved for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. (Paper No. 335.) The Court granted this motion as to the Plaintiffs' failure to warn claims for the detailed reasons stated on the record at the end of the trial. (Paper No. 343).

■ Plaintiffs argue that the Court committed error by depriving them of the benefit of the heeding presumption with respect to their failure to warn claim. Maryland law does recognize such a presumption, which may apply in failure to warn claims to assist the plaintiff in establishing causation. *See United States Gypsum Co. v. Mayor and City Council of Baltimore,* 336 Md. 145, 162, 647 A.2d 405, 413 (1994) (citations omitted)(noting that Maryland courts have "long recognized a presumption that plaintiffs would have heeded a legally adequate warning had one been given"); *see also Eagle–Picher Indus., Inc. v. Balbos,* 326 Md. 179, 229, 604 A.2d 445, 469 (1992) (noting that "[t]he Maryland

'presumption' at a minimum means that jurors are entitled to bring to their deliberations their knowledge of the 'natural instinct' and 'disposition' of persons to guard themselves against danger"). Further, Maryland law governs the application of this presumption. *See* FED. R. EVID. 302. Maryland Rule 5–301 governs presumptions in civil cases. It differs from Rule 301 of the Federal Rules of Evidence in that it adopts the ruling of the Court of Appeals in *Grier v. Rosenberg,* 213 Md. 248, 131 A.2d 737 (1957), instead of the Thayer–Wigmore "bubble-bursting" presumption approach embodied by Rule 301 of the Federal Rules of Evidence.[1] Under the Maryland rule, and the decisional authority that preceded it, a presumption continues to exist as a question for the jury once evidence is introduced to meet or rebut it, unless the Court determines that the rebuttal evidence overcomes the presumption as a matter of law. While it is true that in its pre-trial *in limine* rulings the Court noted that the heeding presumption would permit the Plaintiffs to go forward on their failure to warn claim, it made it quite clear at the time of its Rule 50(a) ruling why that presumption had, as a matter of law, been rebutted. For the reasons already explained extensively on the record when the Defendant's Rule 50(a) motion was granted with respect to the failure to warn claim, it was the Court's view that no reasonable jury could find for the Plaintiffs on the failure to warn claim, based on all of the evidence introduced at trial. The Court explained its reasoning in detail on the record, and it need not be repeated here. The Plaintiffs' request for a new trial on the basis of the Court's dismissal of their failure to warn claims is, therefore, **DENIED**.

**Dr. Kaplan's Accident Avoidance Maneuver Testing**

■ Ford filed Motion in Limine No. 6 on March 15, 2000 to prohibit Plaintiffs'

---

1. *See* 1 MICHAEL GRAHAM, HANDBOOK OF FEDERAL EVIDENCE § 301.1 (4th ed.1996). Under this approach, a presumption disappears as soon as the party against whom it is evoked introduces evidence to meet or rebut the presumption.

expert witness, Michael A. Kaplan, Ph.D., from expressing any opinions at trial based upon the Mechanical Systems Analysis, Inc. ("MSAI") Accident Avoidance Maneuver ("AM") Test. (Paper No. 210.) Dr. Kaplan used this test to assist him in determining whether automobiles have an unreasonably dangerous propensity to roll over. The Plaintiffs filed a response and Ford filed a reply. (Paper Nos. 245 and 259.) A day long Daubert hearing was held on April 14, 2000. During this hearing, Dr. Kaplan was given a chance to testify about his methodology and opinions. Additionally, the parties provided the Court with numerous supplemental filings addressing the reliability and validity of Dr. Kaplan's test results. (Paper Nos. 277, 282–86, 288–95, 298–99.) The admissibility of Dr. Kaplan's testimony regarding his accident avoidance maneuver test was, therefore, fully explored. On April 28, 2000, I issued a 34 page Memorandum and Order granting Ford's motion. *See Samuel v. Ford Motor Co.*, 96 F.Supp.2d 491 (D.Md.2000) (Paper No. 301.) For reasons fully explained in the opinion, Dr. Kaplan's accident avoidance maneuver testing was not admissible because, as a consequence of the steering angles and rates he used in the tests performed on a Ford Aerostar van in connection with this case, the results were not reliable, nor were they relevant. The Plaintiffs filed a motion for reconsideration on May 19, 2000,(Paper No. 318), which also was denied.

The Plaintiffs have raised no points in their new trial motion regarding this issue that require comment beyond the lengthy discussion of the admissibility of Dr. Kaplan's tests found in the Court's Order of April 28, 2000. (Paper No. 301.) The Plaintiffs' request for a new trial on the basis of the exclusion of Dr. Kaplan's testimony regarding his accident maneuver tests is, therefore, **DENIED**.

## Lee Carr's Testimony Regarding "Other Accidents"

This issue was raised by the Plaintiffs prior to trial, and fully addressed by the parties. (Paper Nos. 226, 236, 268, 303 and 308). The Court denied the Plaintiffs' request to excluded this evidence on May 8, 2000. (Paper No. 311.)

The Plaintiffs object to Carr's testimony regarding other roll over accidents, arguing that the Court failed to apply the "substantially similar" test to this evidence, and that the Court failed to follow its own Order of May 8, 2000. As the Defendant correctly notes, (Def. Resp. Pls.' Mot. for New Trial at 39, Paper No. 357), the substantially similar test does not apply to the evidence testified to by Carr. As noted in the Court's May 8, 2000 Order, the substantially similar test is only applicable if evidence is being offered to show product defect. Carr's testimony about other roll over accidents was not offered to show defect or the lack of defect in the present case. The evidence was offered as rebuttal to Dr. Kaplan's testimony about automobile stability factors, and was intended to demonstrate general weaknesses in his testing and theories on this subject.

As for the Court's May 8, 2000 ruling, it did not hold that Dr. Kaplan had to use the exact phrase "roll over immunity" before Carr's rebuttal evidence could be admitted. The Court postponed a final ruling on the admission of this evidence until after Dr. Kaplan's testimony because it was concerned about the danger of confusing the jury with evidence of collateral incidents. After hearing Dr. Kaplan's testimony, however, the Court found that Carr's testimony regarding a limited number of other roll over accidents was relevant as rebuttal to Dr. Kaplan's testimony regarding the static stability ratio and its relation to the performance of vehicles. The evidence that was admitted was carefully limited in scope, and accompanied by a Rule 105 limiting instruction, to insure that it was considered by the jury only for the limited purpose for which it was admitted. The relevance of Carr's testimony in light of Dr. Kaplan's testimony is demon-

strated by the excerpts of trial testimony given by the Defendant in its response. (Def. Resp. Pls.' Mot. for New Trial at 40, Paper No. 357.) This evidence, therefore, was admitted properly. The Plaintiffs' request for a new trial on the basis of the admission of this evidence is **DENIED**.

## Lee Carr's Testimony Regarding Rim–Bending Tests

This issue was raised by the Plaintiffs prior to trial and fully addressed by the parties. (Paper Nos. 230, 238, and 267.) The Court denied the Plaintiffs' motion for reasons stated in its Order of April 11, 2000. (Paper No. 273.) The Plaintiffs additionally attacked Carr's opinions under a Daubert/Kumho tire analysis during trial. (Paper Nos. 313, and 319.) The Court also denied this motion for reasons stated on the record on May 25, 2000. (Paper No. 324.)

The Plaintiffs have raised no points in their new trial motion regarding this issue that require comment beyond the lengthy discussion found in the Court's Order of April 11, 2000, and the Court discussion on the record on May 25, 2000. The Plaintiffs' request for a new trial on the basis of the admission of Lee Carr's testimony regarding rim bending tests is, therefore, **DENIED**.

## Evidence Pursuant to Plaintiffs' Spoliation Claim

The Plaintiffs allege that the Court erred by failing to admit: an unredacted version of an affidavit by one of Ford's inhouse attorneys; the privilege logs prepared by Ford during the discovery phase of this case; and the signature line from a memorandum filed by Ford in opposition to one of the Plaintiffs' motions to compel. This evidence was offered by Plaintiffs to support their claim that Ford failed to preserve evidence relevant to a critical issue in the case, thereby warranting a spoliation instruction to the jury.

The Plaintiffs were allowed to present a great deal of evidence in support of their spoliation claim. (See Order of May 9, 2000, Paper No. 310.) Further, as noted by the Defendant, the introduction of the specific evidence the Plaintiffs unsuccessfully sought to introduce would have required extensive explanation as to its meaning and purpose. This would have introduced collateral issues into the trial, and been confusing to the jury. Also, it would have unnecessarily prolonged an already lengthy trial. The Court, therefore, excluded the additional spoliation evidence under Rule 403 of the Federal Rules of Evidence. Moreover, in light of all the other evidence regarding spoliation that was allowed to go to the jury, the additional evidence would have been unnecessarily cumulative. This evidence, therefore, was excluded properly. The Plaintiffs' request for a new trial on the basis of the exclusion of the additional spoliation evidence is **DENIED**.

## Admission of Lee Carr's Testimony on Causation

While this issue also was addressed by the Court during the course of the trial, the Plaintiffs' argument in the pending motion raises some issues which I believe warrant a more detailed discussion than was possible at trial, given the timing of the Plaintiffs' motion, and the need for a prompt ruling.

Plaintiffs argue that the Court erred when it denied their motion to strike the trial testimony of Mr. Lee Carr, the Defendant's principal expert witness. According to the Plaintiffs, Carr's testimony should have been stricken because he was not asked whether the opinions that he expressed regarding the causation of the roll over of the 1993 extended length Ford Aerostar van were held to a reasonable degree of engineering certainty. Citing a series of Fourth Circuit cases,[2] Plaintiffs

---

**2.** *Fitzgerald v. Manning*, 679 F.2d 341 (4th Cir.1982); *Owens v. Bourns, Inc.*, 766 F.2d 145 (4th Cir.1985); *Baker v. Kroger Co.*, 784 F.2d 1172 (4th Cir.1986); *Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970 (4th Cir.1990); *Blake v. Juskevich*, 998 F.2d 1008, No. 92–

state that Carr's failure to testify that his opinions were held to a reasonable degree of engineering certainty rendered them inadmissible, and request that a new trial be ordered as a result of the Court's refusal to strike Carr's testimony during trial. Plaintiffs' argument is based on a misapprehension of the important differences between the threshold admissibility of expert opinion testimony, *vel non,* and the substantive sufficiency of the evidence required to meet the burden of proof on an essential element of a plaintiff's cause of action. The former is governed by Rules 401, 403, 702, and 703 of the Federal Rules of Evidence, while the later is controlled by the substantive elements of proof of the plaintiff's causes of action, each of which must be proved by a preponderance of the evidence in a civil case. For the reasons that follow, the Plaintiffs' motion on this issue must be **DENIED**.

While there is no dispute that questions regarding the admissibility of evidence in a diversity case are controlled by the Federal Rules of Evidence, not the state rules, there is, as the Defendant noted in its opposition memorandum, some uncertainty about whether state or federal law controls questions regarding the sufficiency of expert evidence offered to meet an essential element of a claimant's cause of action.[3] In *Owens v. Bourns, Inc.,* 766 F.2d 145, 149 (4th Cir.1985), the Fourth Circuit ruled that: "[e]ven under diversity jurisdiction the sufficiency of the evidence to create a jury question is a matter governed by federal law."[4] However, the Third Circuit appears to have taken a dif-

ferent approach. For example, in *Paoli R.R. Yard v. Southeastern Pa. Transp. Auth.,* 35 F.3d 717 (3rd Cir.1994), the court was called on to rule whether Pennsylvania's requirement that an expert testifying on behalf of a personal injury claim must establish causation to "a reasonable degree of medical certainty" applied in a diversity case. *Id.* at 750. The court stated:

If the [state] rule conflicts with federal rules and is 'rationally capable of classification' as procedural rather than substantive, then, as a federal court, the district court ignores the [state] rule and applies the federal rules instead. But 'the determination of whether a particular evidentiary ruling involves federal procedural law or state substantive law, can be difficult. Often admissibility issues overlap with substantive concerns such as standards of proof'.

*Id.* at 751 [citations omitted]. The court concluded that the state requirement that a personal injury plaintiff prove causation to a reasonable degree of medical certainty involved the allocation of the plaintiff's burden of proof, a substantive requirement rather than a procedural one and, accordingly, was governed by Pennsylvania law. *Id.* It therefore analyzed the issue under state, rather than federal, law.

Although the approach taken by the Third Circuit appears to be at odds with that taken by the Fourth Circuit, it is not necessary to decide in this case which one has the greater merit, because the result here would be the same under either the state or federal substantive law. Before turning to this law, however, some prelimi-

2514, 1993 WL 281668 (4th Cir. May 28,-1993); and *Sakaria v. Trans World Airlines,* 8 F.3d 164 (4th Cir.1993).

**3.** 29 Charles A. Wright & Victor J. Gold, Federal Practice And Procedure: Evidence § 6263 (1997) (noting that while many courts have held that Rule 702 of the Federal Rules of Evidence governs admissibility of expert testimony even in cases where state law controls substantive issues, it is unclear whether state law applies when it requires that expert medical opinion evidence be based on a reasonable degree of medical certainty. Some

courts have held that this requirement is not controlling, others have held that it does apply, because it relates to the plaintiff's burden of proof, a substantive issue).

**4.** *See also Fitzgerald v. Manning,* 679 F.2d 341, 346 (4th Cir.1982) (noting that substantive elements of a diversity claim are determined by state law, but whether there is sufficient evidence to create a jury issue on essential elements of plaintiff's claim is governed by federal law).

nary observations regarding the burdens of proof and production and the roles of the judge and jury in connection with the admissibility and evaluation of expert testimony would be helpful.

 It is fundamental that a plaintiff has the ultimate burden of proof, also referred to as the burden of persuasion, or non-persuasion, as to each essential element of each cause of action asserted against a defendant. *See Owens–Corning v. Walatka*, 125 Md.App. 313, 325, 725 A.2d 579, 585 (1999) (noting that the "plaintiff bears the burden of proof in most civil actions to establish facts supporting a cause of action and damages"); *see also Lewis v. First Nat'l Bank of Stuart*, 645 F.Supp. 1499, 1506 (W.D.Va.1986) ("The Plaintiff would bear the burden of proof at trial of showing all the elements of this cause of action."); *Pizani v. M/V Cotton Blossom*, 669 F.2d 1084, 1089 (5th Cir. 1982); 5 Lynn McLain, Maryland Practice: Maryland Evidence, State And Federal §§ 300.4, 300.6 (1987). The plaintiff retains this burden throughout the case, and it never shifts to the defendant.[5] *See Killian v. Kinzer*, 123 Md.App. 60, 68, 716 A.2d 1071, 1075 (1998) (citations omitted)("Only the burden of production shifts; the burden of persuasion always remains with the plaintiff."); *Keeler Brass Co. v. Continental Brass Co.*, 862 F.2d 1063, 1066 (4th Cir.1988) (citation omitted) ("In the usual civil case ... the plaintiff has the burden to persuade the trier of fact that the existence of the proposition to be proved is more probably true than not true.") The standard of proof in a civil action for compensatory damages is proof by a preponderance of the evidence—that is to say, demonstration that each element is more likely so than not so. *See Murray v. United States*, 215 F.3d 460, 464 (4th Cir.2000) (quotation omitted) ("The law of negligence requires the plaintiff prove by a preponderance of evidence that defendant's breach of duty caused the plaintiff's injury. In other words, the plaintiff must prove the defendant's breach of duty was more likely than not (i.e., probably) the cause of injury."); *see also Sayre v. Potts*, 32 F.Supp.2d 881, 886 (S.D.W.Va.1999)(noting that to meet the preponderance of evidence standard a party must show that something is more likely than not); 1 Michael Graham, Handbook Of Federal Evidence § 301.5 (4th ed.1996). It is this standard of proof that generates the requirement that evidence of causation in a negligence or products liability case be established with reasonable certainty, or shown to be more probable than not, as anything less would not be proof by a preponderance of evidence.

 If the total sum of the plaintiff's evidence, whether direct or circumstantial, on an essential element of proof falls short of proof by a preponderance of the evidence in a civil case, then the plaintiff has failed to meet his or her required burden of persuasion, and the defendant must prevail on that claim. *See, e.g., Hensley v. Danek Med., Inc.*, 32 F.Supp.2d 345, 349–50 (4th Cir.1998) (citation omitted)(noting that summary judgment in favor of the defendant may be appropriate if the plaintiff cannot show one of the essential elements to establish negligence); *see also* Graham, *supra*, at § 301.4; McLain, *supra*, at § 300.6. When expert testimony is needed to prove an essential element of a claim,[6] such as causation—as often is the

---

**5.** If the plaintiff does introduce sufficient evidence, in quantity and quality, to meet his or her burden, then the burden of production of evidence, but not the burden of proof or persuasion, does shift to the defendant to produce evidence to meet or rebut the plaintiff's proof, otherwise the defendant faces the risk of a directed verdict against it. *See Kassap v. Seitz*, 315 Md. 155, 162, 553 A.2d 714, 717 (1989)(quotation omitted)("The burden of producing evidence on an issue means the liability to an adverse ruling (generally a finding or directed verdict) if the evidence on the issue has not been produced."); *see also* 1 Michael Graham, Handbook of Federal Evidence § 301.4 (4th ed.1996); 5 Lynn McLain, Maryland Practice: Maryland Evidence, State and Federal § 300.6 (1987).

**6.** There is no "bright-line" test for determining when expert testimony must be produced

case in medical malpractice or products liability cases—then issues regarding the admissibility of the expert's testimony, and its ultimate effect on whether the plaintiff succeeds in meeting his or her burden of proof, can become intertwined.

During trial there is an important distinction between the threshold requirements for admissibility of the plaintiff's evidence, and the weight of that evidence and whether it is sufficient to meet the plaintiff's burden of proof. This distinction is recognized by both the Federal and Maryland Rules of Evidence,[7] and underscores the different functions of the judge and the jury in evaluating expert testimony. As will be addressed later, the judge's first role is preliminarily to determine the admissibility of the expert's testimony, pursuant to Rule 104(a) of the Federal Rules of Evidence, either during pretrial *in limine* practice, or during trial itself. This is the important "gatekeeper" role referred to by the Supreme Court in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, n. 7, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (holding that the trial judge has a gatekeeping responsibility which requires that he or she "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable").

Assuming the court rules that the evidence is admissible as a preliminary matter, the judge may be called upon to rule on a motion to strike the expert's testimony once it has been given, on the basis that something has been revealed during direct or cross examination that warrants reversal of its initial decision to allow the opinion into evidence. An example would be where, during cross examination, the expert concedes that his or her opinion was only guesswork, or based on inadequate or erroneous facts. If no motion to strike is made, the court may be called upon again to evaluate the sufficiency of the expert's testimony at the conclusion of the plaintiff's case, FED. R. CIV. P. 50(a),[8] at the conclusion of all the evidence, but before the case is sent to the jury, FED. R. CIV. P. 50(a), and, finally, after the jury has reached its verdict. FED. R. CIV. P. 50(b). At this juncture, the court has to address whether the challenged expert's opinion was necessary to support an essential element of the case of the party bearing the burden of proof on an issue that was the subject of the expert's testimony. While at this stage the judge continues to have power to conclude that the expert's opinion is deficient as a matter of law, this authority is circumscribed. The court cannot assess credibility, must draw all inferences in favor of the non-moving party, and can take the case away from the jury only if it determines that a reasonable jury could not reach a verdict based on the expert's testimony on the essential element of proof. *See O'Neal v. Celanese Corp.*, 10 F.3d 249, 250 (4th Cir.1993) (citations and quotation omitted) (noting that

---

7. *See, e.g.,* MD. R. 5–104(e), ("This rule does not limit the right of a party to introduce before the trier of fact evidence relevant to weight or credibility."); FED. R. EVID. 104(e) ("This rule does not limit the right of a party to introduce before the jury evidence relevant to weight and credibility.").

8. *See, e.g., Fitzgerald v. Manning*, 679 F.2d 341, 356 (4th Cir.1982), (directing a verdict in favor of the defendant at the end of the plaintiff's case because the plaintiff's expert on causation made concessions during his examination that rendered his opinion too speculative to go to the jury.)

in order to meet a party's burden of proof or production. However, a useful rule-of-thumb is that "[i]f the trier of fact could not reasonably infer a fact essential to a party's charge, claim, or defense without favorable expert testimony, the party will fail to meet its burden of production if it fails to produce adequate expert testimony." 5 LYNN MCLAIN, MARYLAND PRACTICE. MARYLAND EVIDENCE, STATE AND FEDERAL § 300.7 (1987) (collecting cases at note 1). This often is the case in professional liability actions, products liability actions, and personal injury actions where causation is at issue. Applying this rule in a individual case, however, can be a complicated endeavor. *See, e.g., S.B. Thomas, Inc. v. Thompson*, 114 Md.App. 357, 689 A.2d 1301 (1997).

when determining whether to take a case away from the jury, "the judge is not to weigh the evidence or appraise the credibility of witnesses, but must view the evidence in the light most favorable to the non-moving party and draw legitimate inferences in its favor."); *see also Daniel v. Jones*, 39 F.Supp.2d 635, 643–47 (E.D.Va. 1999) (denying defendants' Rule 50 motion because there was evidence from the plaintiff's expert which established a nexus between plaintiff's injuries and defendants' action, and therefore, there was evidence upon which a jury could reasonably return a verdict for plaintiff); *Knussman v. Maryland*, 65 F.Supp.2d 353, 356 (D.Md.1999) (citations omitted). In making such a determination, however, the court may take into consideration all of the evidence admitted as of that stage in the trial, regardless of which side produced it.

■ If the court concludes that the expert's testimony preliminarily is admissible, should not be stricken once given, and that the expert's testimony as to an essential element of proof is not so deficient that, under Rule 50(a) of the Federal Rules of Civil Procedure, a jury could not rely on it to reach a verdict, then the judge's role is at an end.[9] It then is up to the jury to determine what weight, if any, to give the expert's testimony. The jury evaluates the expert's credibility and decides what weight to give to his or her testimony, in the light of the court's instructions on the law. Although the opinion has been admitted into evidence, the jury is free to reject it totally, accept it in part, or in whole. Thus, even if the court was convinced that the expert's testimony was reliable and certain, the jury would be free to ignore it if they felt it was improperly speculative, or otherwise lacking in weight. *See Powers v. Bayliner Marine Corp.*, 83 F.3d 789, 797–98 (6th Cir.1996) (citations omitted) (noting that the jury is free to reject expert testimony even if it is uncontradicted); *see also United States v. 0.161 Acres of Land in Birmingham, Ala.*, 837 F.2d 1036, 1040–41 (11th Cir.1988) (footnote omitted) ("The jury is instructed that it is completely free to accept or reject an expert's testimony, and to evaluate the weight given such testimony in light of the reasons the expert supplies for his opinion.").

■ The court's function is more limited when evaluating rebuttal expert testimony offered by the defendant to counter the plaintiff's expert. In such circumstances, the trial judge usually is called upon to determine threshold admissibility, and possibly to rule on a motion to strike the rebuttal testimony once given, but not to evaluate its substantive weight. This is because the evidence is offered not to prove a fact for which the defendant bears the ultimate burden of proof, but instead to rebut evidence introduced by the plaintiff on an issue for which he or she does bear the burden of proof. In such circumstances, it is exclusively the province of the jury to determine what weight to give to the expert rebuttal testimony. As long as it is admissible under the rules of evidence, it should be considered by the fact finder.[10]

---

**9.** At least until the jury reaches a verdict, after which the court again may revisit the issue under Rule 50(b) of the Federal Rules of Civil Procedure, discussed above.

**10.** Unless the court were to determine, pursuant to Rule 50(a), that the defense rebuttal expert's testimony was so lacking in weight that a reasonable jury could not rely on it to find against the plaintiff, entitling the plaintiff to a judgment as a matter of law. *See generally*, 1 MICHAEL GRAHAM, HANDBOOK OF FEDERAL EVIDENCE, § 301.4, (4th Ed.1996) and 5 LYNN MCLAIN, MARYLAND PRACTICE: MARYLAND EVIDENCE, STATE AND FEDERAL § 300.6 (1987), (discussing the three possible outcomes when a party introduces evidence in an effort to meet its burden of production: 1) the evidence is so lacking in weight that it fails to meet the burden of production; 2) the evidence has sufficient weight to create a jury question; and 3) the evidence is so compelling that it entitles the sponsoring party to judgment as a matter of law, unless rebutted). While it technically is possible that a rebuttal expert's testimony would be admissible, but so lacking in weight that it would not create a jury issue, it is unlikely that this would occur without the court concomitantly deciding that the rebuttal

With respect to preliminary admissibility, the rules of evidence determine whether evidence proffered by the plaintiff is admitted or not. It is the trial court that must, as a matter of law, make this initial determination. *See* Fed. R. Evid. 104(a). A collection of rules of evidence govern. Rule 401 requires that, to be relevant, the proffered evidence must have a tendency to make a fact that is of consequence to the litigation more probable (if affirmatively proving a fact) or less probable (if attempting to disprove a fact) than it otherwise would be. If relevant, the evidence may still be excluded by Rule 403 if its probative value is substantially outweighed by certain inimical effects, such as unfair prejudice, confusion of the fact finder, delay of the proceedings, or presentation of unnecessarily cumulative evidence.

In addition, when the proffered evidence is expert opinion testimony, Rule 702 requires that it be "helpful" to the fact finder, and Rule 703 insists that there be a sufficient factual basis to support the expert's opinion.[11]

■ When a trial judge is required under Rule 104(a) to determine threshold admissibility of challenged expert opinion testimony, he or she must apply Rules 401, 403, 702, and 703 to determine whether the evidence may be considered by the fact finder. If the proffered expert testimony is speculation, or conjecture, it is not relevant. This is because it has no tendency to make a significant fact more or less probable than otherwise, as guesswork is the very antithesis of probability. Even if arguably relevant, conjectural opinion testimony should be excluded under Rule 403 because whatever minimal probative value

it may be said to possess clearly is substantially outweighed by the danger of confusion. Additionally, as already stated, an expert opinion based on speculation or guesswork will not meet the helpfulness requirements of Rule 702, nor will it be the product of reliable facts, as required by Rule 703. Thus, if speculative or conjectural, the opinion of an expert should be excluded by the trial judge under Rule 104(a).

■ However, nowhere in any of these rules is there a requirement that before an expert's opinion testimony may be admitted, he or she must affirmatively state that the opinion is held to a "reasonable degree of certainty or probability." If the court determines, following its Rule 104(a) inquiry, that the foundational requirements of Rules 401, 403, 702, and 703 are met, the opinion is admissible regardless of whether the "magic words" have been evoked to elicit it. Correspondingly, if the expert's opinion would not pass muster under these rules, then it is not rendered admissible by the expert's testimony that he believes in his or her opinion "to a reasonable degree of certainty or probability."

When applying the rules of evidence that govern admissibility of expert opinion testimony, the court must be sensitive to the fact that they do not require the expert to testify with absolute certainty, or without any doubt whatsoever. So long as the opinion has a tendency to prove a consequential fact by probability, it will be relevant. Further, if the product of reliable methodology, and sufficient facts or data, it is helpful enough to be considered by the jury.[12]

---

expert's testimony was so lacking as to be inadmissible in the first place.

**11.** These requirements will be further enhanced effective December 1, 2000, when the proposed revisions to the federal rules of evidence are expected to take effect. As changed, Rule 702 will require that, before it can be admitted, an expert's opinion must be based on (1) sufficient facts or data; (2) that the opinion be the result of reliable methodol-

ogy; and (3) that the methodology be reliably applied to the facts of the case. Speculation, guesswork and conjecture are not acceptable substitutes for facts and data, and an opinion based on speculation is not founded on reliable methodology.

**12.** *Stutzman v. CRST, Inc.*, 997 F.2d 291, 296 (7th Cir.1993) (expert's lack of absolute certainty goes to weight of his or her testimony, not its admissibility); *Davidson v. Miller*, 276

If the trial court determines as a preliminary matter that the plaintiff's expert's opinion is not fatally speculative, and admits it, the plaintiff is not home free, because Rule 104(e) allows the defendant to attack the credibility of the expert, and the weight of his or her opinion. This may be done intrinsically, through cross-examining the expert to expose deficiencies in his or her credibility, or in the factual bases or methodology supporting his or her opinions. It also may be done through the introduction of extrinsic evidence, either documentary or testimonial, that contradicts the expert's opinion.

As noted above, once all the proof on the issue about which the expert has testified is in evidence, the court must then decide under Rule 50(a) of the Federal Rules of Civil Procedure, at the conclusion of the plaintiff's case, and usually again at the close of all of the evidence, whether the plaintiff has presented enough evidence that a reasonable jury, drawing all inferences in favor of the plaintiff, could find for the plaintiff on that issue. *See Reeves v. Sanderson Plumbing Prods., Inc.,* —— U.S. ——, —— - ——, 120 S.Ct. 2097, 2109–10, 147 L.Ed.2d 105 (2000) (quoting Fed.R.Civ.P. 50(a)) ("Under Rule 50, a court should render judgment as a matter of law when 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.' . . . [I]n entertaining a motion for a judgement as a matter of law [Rule 50 motion], the court should review all the evidence in the record. . . . [T]he court must draw all reasonable inference in favor of the non-moving party, and it may not make credibility determinations or weigh the evidence.") It is at this juncture in the case, when all the proof is in, that the substantive sufficiency of the evidence is taken into account. The court weighs the challenged expert's testimony on direct against any concessions or contradictions that may have been developed during cross, as well as the counter-evidence from other witnesses and/or documents. If the expert opinion testimony is determined by the court to be so speculative or conjectural that a reasonable jury could not rule in favor of the plaintiff on the issue it is offered to prove, then both Maryland and Federal cases hold that the plaintiff has failed to meet his or her burden of proof. This is because speculative or conjectural evidence cannot establish the existence of an essential element of a claim to a reasonable degree of probability.[13]

Md. 54, 60–62, 344 A.2d 422, 427–28 (1975) (expert testimony must be reasonably probable, but need not be expressed to a certainty); *Bethlehem Steel Co. v. Jones,* 222 Md. 54, 58, 158 A.2d 621, 623–24 (1960) (expert testimony cannot amount to mere guess or speculation, but absolute certainty is not required either); *Baughman Contracting Co. v. Mellott,* 216 Md. 278, 283, 139 A.2d 852, 854 (1958) (expert witness not precluded from testifying simply because not willing to express opinion with absolute certainty); 29 CHARLES A. WRIGHT & VICTOR J. GOLD, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 6264 (1997) (noting that although courts "will reject expert testimony where it is based on rank speculation", they generally will "defer to the jury's ability to weigh the evidence where an expert's opinion is equivocal"); 3 CHRISTOPHER B. MUELLER & LAIRD C. KIRKPATRICK, FEDERAL EVIDENCE, § 350 (2d Ed.1994) ("The fact that an expert cannot be categorical, and admits some uncertainty in his conclusions, does not mean that his testimony fails the helpfulness requirement

. . . . On the other hand, uncertainty that is so acute that the testimony would amount to little more than a guess or a shrug does implicate the helpfulness criterion, and such testimony may properly be excluded as unhelpful.").

13. *See Driggers v. Sofamor,* 44 F.Supp.2d 760, 765 (M.D.N.C. 1998) ("The evidence must be fact specific and not merely speculative."); *Mayor and City Council of Baltimore v. Theiss,* 354 Md. 234, 261, 729 A.2d 965, 980 (1999) (Rodowsky, J., concurring) (noting that proof of essential elements of plaintiff's claim, such as causation or damages must be sufficiently probable, and not based on speculation or conjecture); *Pierce v. Johns–Manville Sales Corp.,* 296 Md. 656, 666, 464 A.2d 1020, 1026 (1983) (holding that damages cannot be proved by mere possibility, but must be proved by probability, a greater than 50% chance); *Ager v. Baltimore Transit Co.,* 213 Md. 414, 421, 132 A.2d 469, 473 (1957) ("In matters of proof, neither the Courts nor juries

It is noteworthy for the purposes of resolving the pending motion that each of the cases cited by Plaintiffs in support of their position dealt with an evaluation of whether the Plaintiffs' expert evidence on causation had met the substantive sufficiency required by the burden of proof.[14] Importantly, not one of these cases even discussed the rules of evidence governing the admissibility of the evidence that had been allowed at trial, or considered by the court in support of the plaintiff's position at summary judgment practice.[15] Instead, the court evaluated the evidence under either Rule 50 or 56 of the Federal Rules of Civil Procedure, and determined that the expert's opinion was so speculative that it failed to establish causation, an essential element of proof, by a preponderance of evidence—i.e., reasonable certainty or probability.

Plaintiffs have cited no cases or other authority to support their argument that a party sponsoring the opinion of an expert must, when laying the foundation for an expert's testimony on causation, use words to the effect of "do you have an opinion to a reasonable degree of certainty," or that in providing his or her opinion the expert must affirmatively use these words to characterize the level of conviction he or she has in the opinion expressed. As already noted, the rules of evidence themselves do not require the use of these words, nor do the cases and learned commentaries.[16]

are justified in inferring from mere possibilities the existence of facts, and they cannot make mere conjecture or speculation the foundation of their verdicts.").

**14.** *See Fitzgerald v. Manning*, 679 F.2d 341 (4th Cir.1982) (directing a verdict, in a medical malpractice case, in favor of defendant at the close of plaintiff's case because plaintiff's medical expert's causation testimony did not establish that defendant's alleged negligence was more likely than not the cause of plaintiff's injuries); *Owens v. Bourns, Inc.*, 766 F.2d 145 (4th Cir.1985) (denying defendant's motions for judgment as a matter of law. On appeal, the Fourth Circuit reversed because it concluded that plaintiff's evidence on causation was legally insufficient to allow jury to decide liability. The Court concluded that plaintiff's proof, including expert testimony, did not establish that it was more likely that defendant's alleged negligence caused plaintiff's injuries than any other cause.); *Baker v. Kroger Co.*, 784 F.2d 1172 (4th Cir.1986) (On appeal from plaintiff's verdict in malicious prosecution, tortious interference with contact case, the Fourth Circuit reversed, in part, because it found that testimony from plaintiff's damages expert was insufficient to submit to jury on the issue of lost earning capacity); *Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970 (4th Cir.1990) (upholding district court's grant of summary judgment in favor of defendant in product liability case. Evidence from plaintiff's causation expert failed to establish that allegedly defective product caused plaintiff's injuries by reasonable probability); *Blake v. Juskevich*, No. 92–2514, 1993 WL 281668, 998 F.2d 1008 (4th Cir. July 28, 1993) (unpublished opinion) (affirming trial court's grant of the defendant's motion for directed verdict because the plaintiff's causation expert was unsure of his conclusions, thus causation was not proved by reasonable certainty); *Sakaria v. Trans World Airlines*, 8 F.3d 164 (4th Cir.1993) (upholding district court's grant of summary judgment to defendant in wrongful death case. Causation was not proved beyond a possibility, jury would have to speculate if allowed to consider plaintiff's proof).

**15.** Rule 56(e) of the Federal Rules of Civil Procedure requires that the facts offered to support or oppose a summary judgment motion must be "evidentiary facts", that is facts that are admissible into evidence.

**16.** *See Holbrook v. Lykes Bros. S.S. Co. Inc.*, 80 F.3d 777, 785 (3rd Cir.1996) (holding that medical experts are not required to "recite the talismanic phrase" that their opinions are given "to a reasonable degree of medical certainty"); *Stutzman v. CRST, Inc.*, 997 F.2d 291, 296 (7th Cir.1993) (quoting *United States v. Cyphers*, 553 F.2d 1064, 1072–73 (7th Cir. 1977)) (holding that "Rule 702 does not require 'that an expert's opinion testimony be expressed in terms of a reasonable scientific certainty in order to be admissible.... [A]n expert's lack of absolute certainty goes to the weight of that testimony, not its admissibility' "); *Schulz v. Celotex Corp.*, 942 F.2d 204, 208–09, (3rd Cir.1991) (finding that failure of the expert, a medical doctor, to use phrase "reasonable medical certainty" did not make opinions inadmissible, as it is only a "useful shorthand expression that is helpful in forestalling challenges to the admissibility of expert testimony"); *see also Pupkar v. Tastaca,*

Applying the above principles to this case, it is clear that the Plaintiffs' motion must be denied. The admissibility of Carr's opinion testimony was extensively analyzed before trial, as Plaintiffs filed two separate motions *in limine* challenging his qualifications to render certain opinions. (Paper Nos. 229, 230.) Those motions were denied. (Paper No. 273.) After the start of trial, Plaintiffs again challenged Carr's testimony, this time filing objections on the basis of "Daubert/Kumho".[17] (Paper No. 313.) Because this challenge failed to incorporate the analytical factors set forth in Daubert and Kumho, the Court directed that the Defendant reply to the challenge using the format of the Daubert/Kumho checklist previously required in connection with the Defendant's challenge to Plaintiffs' expert, Dr. Kaplan. *See Samuel v. Ford Motor Co.*, 96 F.Supp.2d 491, 504 (D.Md.2000).

The Defendant complied, (paper no. 319), filing a memorandum, with exhibits that detailed the methodology employed by Carr in arriving at his opinions regarding causation, as well as the factual basis for his opinions. The Plaintiffs filed a reply. (Paper No. 362.) Following review of these materials, the Court denied the Plaintiffs' motion, and Carr was allowed to testify. He did so, for two days, detailing his investigations, the testing that he conducted, and the factual basis for his opinions regarding causation, which were expressed without hesitation, qualification or equivocation. He was extensively cross examined by Plaintiffs, who never asked him whether his opinions were held to a reasonable degree of certainty or probability, and he stuck to his guns throughout cross without once backing off of the forcefulness of his opinion that the cause of the rollover of the Aerostar was the collision with the Econoline van, not its design.

While it is true that during his testimony Carr never was asked whether his opinions regarding causation were held to a reasonable degree of certainty, and he did not otherwise volunteer this during his testimony, it was clear to the Court that his testimony met the threshold requirements for admissibility imposed by the

999 F.Supp. 644, 645 n. 1 (D.Md.1998) (quoting J. MURPHY, MARYLAND EVIDENCE HANDBOOK § 1404 (2d ed. 1993)) ("There is no appellate court opinion in Maryland that has held that the mantra 'within a reasonable degree of medical probability' is absolutely required before each and every medical expert opinion. It is understood, however, that '[t]hese wooden phrases are required to make sure that the expert's opinion is more than speculation or conjecture' "); *Karl v. Davis*, 100 Md.App. 42, 52, 639 A.2d 214, 219 (1994); *Mayor and City Council of Baltimore v. Theiss*, 354 Md. 234, 261–62, 729 A.2d 965, 980 (1999); 2 MICHAEL GRAHAM, HANDBOOK OF FEDERAL EVIDENCE, § 702.1 (4th ed. 1996) ("While questions to an expert designed to elicit an opinion as to a fact of consequence including an expression of his estimate of probabilities of the facts expressed in the opinion are frequently couched in terms of reasonable certainty, such phraseology is generally not mandated."); 29 CHARLES A. WRIGHT & VICTOR J. GOLD, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 6264 (1997) ("Courts generally also defer to the jury's ability to weigh the evidence where an expert's opinion is equivocal. For example, an expert may give an opinion that there is a causational link between defendant's ac-

tivities and plaintiff's injuries, but the expert may be unable to state the opinion with a high or even a reasonable degree of medical certainty. In such a case, most courts will admit the opinion while permitting cross-examination to reveal for the trier of fact the expert's uncertainties."); CHRISTOPHER B. MUELLER & LAIRD C. KIRKPATRICK, MODERN EVIDENCE, § 7.6 (1995) ("The fact that an expert cannot be categorical, and admits some uncertainty in his conclusions, does not mean his testimony fails the helpfulness requirement.... Where reasons for reservations can be made intelligible to a lay jury, it is entirely appropriate to let the expert lay them out so the jury may better evaluate his testimony and reach its own conclusion as to its worth. On the other hand, uncertainty that is so acute that the testimony would amount to little more than a guess or a shrug does not implicate the helpfulness criterion, and it may properly be excluded as unhelpful.")

**17.** *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

Federal Rules of Evidence, and that following his examination there was no legitimate basis to strike his testimony.

Moreover, because Carr was called by the Defendant to rebut Plaintiffs' theory of causation, and not to prove a fact for which the Defendant bore the ultimate burden of proof/persuasion, the cases cited by the Plaintiffs that discuss the sufficiency of evidence that a plaintiff must produce on a fact for which he or she has the burden of proof are not controlling. It was enough for the Defendant's purposes that Carr's testimony was, as a threshold matter, admissible, as governed by the rules of evidence, and that, following his direct and cross examination nothing emerged that, in the opinion of the Court, interjected sufficient doubt regarding the certainty with which he expressed his causation opinions, that would justify striking his testimony. Accordingly, it was proper for the jury to consider Carr's opinions, and to give them the weight they felt they deserved.

Plaintiffs were free, as they did, to attack Carr's credibility, and challenge the weight of his opinions, FED. R. EVID. 104(e), but this challenge did not render his testimony inadmissible as a threshold matter, or warrant striking it once he concluded.

To be sure, much labor could have been spared if the Defendant had used the "magic words" and directly asked Carr whether his opinions were held to a reasonable degree of certainty or probability. Indeed, cautious counsel, anxious to avoid motions such as this one frequently do use them, just to play it safe. However, if Plaintiffs genuinely sensed that Carr was equivocal in his causation opinion,[18] they could have asked him during cross examination whether his opinions were held to a reasonable degree of certainty. They chose not to do so, undoubtedly for tactical

reasons and, instead, the day after he had testified and returned to Texas, they moved to strike his testimony.

In light of the above analysis, it is clear that to grant the Plaintiffs' motion after the exhaustive Rule 104(a) proceedings regarding the admissibility of his opinions would exalt form over substance. There simply is no requirement under state or federal law that an expert's opinion, otherwise admissible under the rules of evidence, must be excluded because the form of the questions asked to elicit it did not include the phrase "do you hold your opinions to a reasonable degree of certainty". Once admissible as a threshold matter, and nothing having been brought out during cross examination or from extrinsic sources to require a contrary result, Carr's opinion was admissible and worth whatever weight the Jury chose to afford it.

**Conclusion**

The Plaintiffs allege that the Court was in error about six issues during the trial. The Plaintiffs have not persuaded the Court that its original rulings regarding any of these six issues were in error. There is, therefore, no basis for granting the Plaintiffs' request for a new trial. The Plaintiffs' motion for a new trial is **DENIED**.

---

**18.** A belief that Plaintiffs were not likely to hold, in light of Carr's dogmatic refusal to concede any ground regarding his opinions throughout multiple days of pretrial depositions, excerpts of which were attached as exhibits to the plethora of papers filed addressing his testimony. (*See, e.g.,* Def. Resp. to Pls' Mot. to Preclude Testimony of Lee Carr Ex. A, deposition testimony of 9/23/1997; Ex. B. deposition testimony of 3/10/1998, and Ex. C, deposition testimony of 5/4/2000, Paper No. 319.)